269 So.2d 164

**Reginald E. SMITH**

v.

**STATE.**

**I Div. 255.**

Court of Criminal Appeals of Alabama.

Nov. 14, 1972.

148

David L. Barnett, Mobile, for appellant.

William J. Baxley, Atty. Gen., and Sarah V. Maddox, Asst. Atty. Gen., for the State.

W. J. HARALSON, Supernumerary Circuit Judge.

The indictment charged appellant with grand larceny and receiving or concealing stolen property, etc., under Title 14, Section 338, Code of Alabama 1940. The verdict was general, finding him guilty as charged in the indictment. The sentence imposed by the Court was four years imprisonment, from which he has appealed.

Where one count of an indictment is sustained by the evidence, a general verdict of guilty will be referred to that count. Haney v. State, 19 Ala.App. 79, 95 So. 57; [See cases cited in Vol. 6A, Ala. Digest, Criminal Law, ⊱878(2)]. The punishment inflicted was not greater than prescribed for either of the counts. Black v. State, 39 Ala.App. 269, 97 So.2d 833.

At the conclusion of the State's evidence, the appellant moved that the evidence be excluded, which motion was overruled by the court.

In brief, the counsel for the appellant adopts the statement of facts set out in the State's brief. The court agrees and hereby adopts the statement with one interpolation set out in parenthesis.

The statement reads as follows:

"Janell Summersgill, an employee at J. C. Penney, testified that Appellant came in the store and she saw him take some suits and leave with them. She did not see him pay for the suits. She told Mr. Smith about the incident and then went to the front door where she saw Appellant getting into a car with the suits.

"Mr. James H. Smith testified that on April 17, 1971, he was working at J. C. Penney Company. Mrs. Summersgill told him that a black man left with some suits. He ran outside to the parking lot where the man got into a car driven by another man (and observed him face to face from only a few feet away). The man he chased had put the suits in the car. He identified Appellant in court as being the man with the suits. Mr. Smith stated that the incident took place around 1:15 or 1:30 in the afternoon. Appellant had on a brown suit and a hat.

"Later that day he went to the Toulminville area. The suits were in a police officer's possession and he identified the suits at that time. On re-direct examination he testified that he did not see Appellant at Toulminville but did see the other man in the car.

"Captain Walter Burch testified that he stopped an automobile he had been following in response to a dispatch concerning a theft of some clothing at Penney's Department Store. He picked up six

suits of clothes near there and these suits came from the car he stopped. Mr. Smith arrived at the scene and identified the clothing.

"On cross-examination he testified that he did not see anyone get out of the car prior to stopping it. Only one person was in the car when it stopped.

"Valerie Elaine Smith, Appellant's sister, testified that her brother went to a laundromat with a neighbor's little boy about 11:00 A.M. He returned around 12:30 P.M. She and Appellant then went to a neighbor's apartment and cooked some food. They returned home and Appellant took two small children to watch a football game. He returned around 1:00 P. M. and helped her rearrange some furniture. Appellant left about 1:30 P.M. to see his mother and a friend of hers. He had on a blue shirt and black shoes. The witness called their mother around 2:00 P.M. and they had a conversation concerning Appellant.

"Michael Spraggins testified that he knew Appellant and went with him to the washerteria. They were gone about one hour.

"Sarah Elizabeth Smith, Appellant's mother, testified that she was at home on April 17, 1971. She saw her son about 1:30 that day. She received a call from her daughter and Appellant was with her at that time. Mrs. Smith testified that her son had on a blue shirt, white jeans, and black shoes.

"Larry Todd testified that on April 17th he was employed at Bailey's Superette in Toulminville. Around 2:00 that afternoon he was making a delivery when a dark Ford stopped and someone jumped out of the car. He did not see anything in the man's hands when he jumped. The car proceeded and he saw Captain Burch following the car. After the cars left, a man hiding in some bushes came out and started walking down the street.

He then stated that the man who jumped out of the car was not Appellant. The man had on a black polo shirt, white jeans, and black shoes.

"The defense rested and then there was a hearing outside the jury concerning a lineup.

"Officer William Mingus testified that on April 21, 1971, he talked with Appellant concerning the larceny of some clothing from J. C. Penney. He asked him to be in a lineup and advised him of his right to have an appointed attorney at the lineup. Appellant signed a waiver in his presence. Officer Mingus stated that Appellant was not induced to sign the waiver and was not threatened. On voir dire examination by defense counsel he stated that he read the entire waiver form to Appellant.

"Appellant then testified concerning the lineup. He stated that Officer Mingus showed him the form and asked him to sign it. Mingus told him that he had a right to have an attorney at the lineup. He refused to sign and then Officer Smith was brought in. Appellant stated that Officer Smith told him they did not need his signature to put him in a lineup. That he did not have to or need to have an attorney at the lineup. He was told he could be made to be in the lineup so he signed.

"On cross-examination Appellant testified that he was also asked to make a statement, but he said he did not have any statement to make. He also stated that Officer Mingus read the waiver to him and that he read it too.

"Officer Mingus then took the stand again and testified that he did not tell Appellant that it did not make any difference whether he signed the waiver or not; that he explained the waiver to him and that he appeared to understand the waiver. Officer Mingus also stated that no one told Appellant anything different

about the waiver. The waiver was then introduced into evidence over the objection of defense counsel.

"Officer Mingus then testified that they had a lineup. There were six black males in the lineup ranging in age from seventeen to twenty-six. Three other participants in addition to Appellant were seventeen. The heights ranged from five foot eight to six foot two, with only one person being over six feet. Two other individuals beside Appellant were five foot eight. James Smith viewed the lineup and picked out Appellant.

"On cross-examination he testified that he made no statements or indications to Mr. Smith during the lineup.

"Officer Mingus' testimony before the jury was in substance the same."

■ Under the testimony adduced by the State, there was no error by the court in overruling the motion to exclude the evidence. The evidence offered by the State and the denial by appellant of any participation in the alleged crime charged and the evidence offered by appellant tending to establish an alibi made the question of the guilt or innocence of the appellant a question of fact for the consideration of the jury. Morris v. State, 47 Ala.App. 132, 251 So.2d 629.

Before any adversary charge of any kind was made against the appellant, a lineup was held at police headquarters and appellant picked by witness Smith as the man he had seen leave the J. C. Penney Store with the suits of clothes. A waiver of right to have an attorney represent him, signed by appellant, was offered in evidence by the State and objected to by the appellant, on the ground that he did not sign voluntarily, but in fact was coerced by the actions of the police officers present.

■ On voir dire examination outside of the presence of the jury and later in the presence of the jury, both the state and appellant were allowed searching examination and cross-examination as to the events leading up to the signing of the waiver. The police officer, a witness for the state, who took the waiver and the appellant each gave his version of the transaction. To set out this testimony in full would unduly prolong this opinion. From a careful consideration of the record we think there was no error in the admission of the waiver into evidence by the court upon whom the duty devolved to make the decision as to whether the waiver was voluntarily executed.

In speaking of the waiver of a right secured by Constitutional Amendment, the Supreme Court in the well-known case of Miranda v. Arizona stated that a defendant may waive "effectuation" of his rights, "provided the waiver is made voluntarily, knowingly and intelligently." In the case at bar we think there was testimony from which the court could properly find this to be true.

We are further of the opinion that the rights of appellant were not violated under the rule that the totality of the surrounding circumstances must be considered in examining the legality of a pre-trial confrontation. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199.

■ Appellant argues strenuously in brief that the court was in error in admitting into evidence the in-court identification of the appellant by witness Smith because it was not free from the taint of the identification made at the lineup, where appellant was not represented by counsel and was not based on an independent origin or source of identification (that is, facts independent of the lineup and free from its influence). He cites United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L. Ed.2d 1178 which hold that an in-court identification of the accused by a witness

who has viewed the accused in a lineup before trial, without counsel, is not admissible unless an independent origin of the identification is established.

The decision of this question was for the trial court to determine from a consideration of the evidence adduced.

 There was testimony by witness Smith, the store manager, that he observed the appellant from a distance of a few feet; that he saw his face, noticed the clothes he was wearing and had full opportunity to get a close-up view of him as he left the premises near the store. At the trial he again identified appellant as the man he had seen on the occasion above set out.

We hold there was no error in the court's action in its ruling in this regard. United States v. Wade, supra; Robinson v. State, 45 Ala.App. 236, 228 So.2d 850.

We think the case was properly submitted to the jury under the evidence adduced by the State and that of an alibi by appellant.

Several written charges requested by the appellant were refused. The principles of law sought to be set out in these charges were covered by the oral charge of the court, and therefore no error appears in their refusal.

Our search of the record reveals no error to reverse and the case is affirmed.

The foregoing opinion was prepared by Honorable W. J. HARALSON, Supernumerary Circuit Judge, serving as a Judge of this Court under Section 2 of Act No. 288, Acts of Alabama, July 7, 1945, as amended; his opinion is hereby adopted as that of the Court.

The judgment below is hereby

Affirmed.

All the Judges concur.