This appeal is from a conviction of burglary in the second degree and a sentence of eight years imprisonment.
Sparkman High School teacher Walter Dulaney and two of his students testified that as they drove by Mr. Dulaney's residence in an automobile they noticed another automobile in or close to the driveway; Mr. Dulaney went to the back door. He testified that the back door had been broken into. The students stayed toward the front of the house and saw a young man coming around the side of the house, whom they identified as defendant. He was also seen by Mr. Dulaney, who also identified him as defendant. The three witnesses testified that defendant hastily took off in the parked automobile. There was little, if any, evidence that anything had been stolen from the house, though Mr. Dulaney said that "the chest of drawers had been pulled out and had been rambled through" and things had been "piled at the door," including two vacuum cleaners and two or three radios. He said a tire tool, that did not belong to the house, was found in the house near the chest of drawers.
Defendant took the stand and denied the charge against him and said that he was not the person described by the named witnesses for the State.
The only point made by appellant on appeal is as to the identity of defendant and more specifically as to the action of the court in overruling defendant's objection to *Page 60 
the in-court identification of defendant by each of the three witnesses mentioned. Appellant urges that the in-court identification should not have been permitted, that it was tainted by a suggestive lineup in which defendant was identified by each of the witnesses.
The lineup was conducted the day after the alleged burglary. In the lineup were six young men of the same color or race as defendant. Appellant bases his charge of suggestiveness in the lineup procedure primarily upon two grounds: (1) the viewers of the lineup were informed by the officers that the guilty party was in the lineup and (2) a toboggan, like one the witnesses said defendant had in his hand as he left the house to get into his automobile the day of the burglary, was in defendant's hand, or close to defendant, at the time of the lineup.
In contending that the in-court identification of defendant was rendered inadmissible in evidence by reason of the asserted defects in the lineup procedure, appellant cites United Statesv. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, as authority for his assertion, "that in any pre-trial lineup or identification procedure, the Defendant must be afforded counsel to protect his rights at such a proceeding." NeitherWade nor Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951,18 L.Ed.2d 1178, decided the same day as Wade, went as far as urged by appellant. In the case before us, there was no indictment at the time of the lineup and there had been no institution of any prosecution against defendant. To such a situation, the necessity for the presence of counsel for defendant or a waiver of the right to counsel at such time does not apply. Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877,32 L.Ed.2d 411. Even so, an in-court identification is inadmissible if it is so tainted by a previous, unnecessarily suggestive lineup identification that the origin or source of the in-court identification was not independent of the lineup.Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401;Hannon v. State, 48 Ala. App. 613, 266 So.2d 825; Smith v.State, 49 Ala. App. 147, 269 So.2d 164; Houston v. State,49 Ala. App. 403, 272 So.2d 610; McCay v. State, 51 Ala. App. 307,285 So.2d 117; Lindsey v. State, Ala.Cr.App., 331 So.2d 797.
Quite understandably, there were some discrepancies in the testimony of witnesses as to the lineup procedure. They are insubstantial when taken as a whole and considered with the frequent impossibility of witnesses to see, to hear and to remember alike all of the details of a transaction, especially when such details are not such as are calculated to impress them deeply. One witness said the police informed him before the lineup that they had a suspect; another said that he was informed by one of the witnesses that the police had told him they had the person who broke into the house, but that the police did not say the man was in the lineup; the third witness said that Mr. Dulaney told him at school the morning of the lineup "that they had caught him." These statements, whether considered together or separately, whether reconcilable or not, would have had little, if any, tendency toward a misidentification of defendant, unless it be said that a lineup per se tends to lead to misidentification. Reason dictates to any witness attending a lineup that someone suspects someone in the lineup. The statements referred to do not show that the witnesses were any better informed, or any more likely influenced to misidentify defendant, than if nothing had been told any of them other than that they were to view a lineup. A lineup is not a test run, a fire drill or an academic proceeding. The victim of a crime has the right to assume when asked to come to a lineup that he is not being toyed with, that there is more than an infinitesimal chance of a member of the lineup being the criminal which would be true of a lineup in which no one who arranged it suspected or had any reason to suspect that the criminal had been apprehended. It is perfectly natural for persons called to view a lineup to understand that a suspect is in the lineup. That they are told that he is, by someone connected with the lineup, although generally inadvisable, does not contaminate the proceeding. *Page 61 
Furthermore, in a dialogue relative to a lineup, it is readily understandable that the passive one of the two would interpret the language of the other to the effect that a suspect, or that even the guilty person, would be in the lineup, even though such other person had not so expressed himself.
Another criticism by appellant of the lineup is directed to the clothing worn by the participants. It is stated: "Five of the men in the lineup had Tee shirts and shoes on. One man in the lineup had a jacket and sneakers on." We think earnest and sincere counsel for appellant over simplifies the clothing. Notwithstanding an additional usage of the term "T-shirt" that has evolved,[1] we understand that, historically and typically at least, a man's T-shirt is a shirt without a collar and with short sleeves, it being usually distinguishable from most undershirts in that they are often sleeveless. Unfortunately, a color photograph in the record, State's Exhibit No. 2, taken of the lineup cast, was not readily available to appellant's counsel at that time of the writing of his brief; he stated therein that he "cannot find it. It is assumed that the court has the picture in their possession." We have. Only one person in the lineup, not the defendant, had on a typical T shirt, one resembling a "T." Each of the others, including defendant, had on a shirt or jacket with an attached collar, and on all others the shirts were long-sleeved, except one with sleeves reaching close to the elbows. There is quite a variety of colors, lurid enough to make Joseph's coat of many colors look drab. Appellant's point as to the shirts is not well taken.
We agree with appellant that apparently defendant was wearing sneakers, while the other five were wearing shoes of leather or the like, This, however, is no more distinctive as to defendant than is the manner of dress as to each of the others in the lineup. There is no more observable singularity in the shoes of defendant than in the garments of any of the other five. One witness said defendant wore tennis shoes (sneakers) the day of the alleged burglary; another said he did not recall what kind of shoes defendant wore; the third witness was not asked a question about defendant's shoes as seen at Mr. Dulaney's house. We have little reason to believe that any of the witnesses in viewing the lineup would have been led to an identification of defendant by reason of the shoes.
The hardest pressed point made by appellant as to any suggestiveness of the lineup is with reference to a toboggan, which the three witnesses said defendant had in his hand as he left the house of Mr. Dulaney and went to his automobile. They testified that defendant ordered them to get out of his way as he left the premises. In the photograph of the characters in the lineup, it appears that defendant is holding in his left hand an item that we are led to believe is a toboggan or some kind of headdress. In defendant's testimony he said that it was in his hand at the time he was viewed by the witnesses. This is emphatically denied by two of the officers at the lineup. It seems reasonably certain from the testimony as a whole that a toboggan was at the scene of the lineup, but no one other than defendant testified that it was in his hand at the time he was viewed by the witnesses.
It is clear from the record as a whole, and appellant shows nothing definite to the contrary, that whatever of a possibly suggestive nature there was about the lineup, it was not designed or arranged by any of the officers conducting it. On the whole, it seems that the highest standards of fairness were observed. The positive and undisputed testimony was that no one other than each individual in the lineup decided what clothing he would wear. They were "exactly as they were dressed." The other five persons were prisoners. No preparation was made as to how any one of them would be attired and it was "just a coincidence that it came out that way." The lineup, in *Page 62 
our opinion, was not unnecessarily or illegally suggestive.
In addition, the testimony of the witnesses as to the identity of defendant was extraordinarily strong and convincing, without regard to what occurred at the lineup. Each one had an adequate opportunity to obtain an accurate mental picture of the man observed at Mr. Dulaney's house. The time between then and the lineup was too short to have dimmed the image. None would have had the possibility of anything to gain by an incorrect identification. The factors to be considered in evaluating the likelihood of misidentification as set forth inNeil v. Biggers, supra, as a guide to determine whether there is "a very substantial likelihood of irreparable misidentification"[2] preponderate heavily in favor of the trustworthiness of the testimony as to identity.
Although we have discussed the only questions raised by appellant, we have undertaken to search the record for any and all error prejudicial to defendant and have found none. The judgment below should be affirmed.
The foregoing opinion was prepared by Supernumerary Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under Section 2 of Act No. 288 of July 7, 1945, as amended; his opinion is hereby adopted as that of the Court. The judgment below is hereby
AFFIRMED.
TYSON, HARRIS, DeCARLO and BOOKOUT, JJ., concur.
CATES, P.J., not sitting.
[1] Webster's New International Dictionary (3rd edition) supports appellant's counsel to the effect that a T-shirt embraces shirts with long sleeves and collars.
[2] Simmons v. United States, 390 U.S. 377 at 384, 88 S.Ct. 967
at 971, 19 L.Ed.2d 1247.