Robbery; sentence: ten years.
The appellant was indicted for the robbery of Michael Crumpton in the amount of $793.00. The trial jury found the appellant guilty as charged and fixed punishment at ten years imprisonment. The trial Court then entered judgment, setting sentence in accordance with the verdict. Notice of a working appeal was immediately given.
The evidence presented by the State tended to show that in late November of 1975, the appellant and two other black males entered A.A. Bond's Furniture Store in Birmingham, Alabama, a few minutes before closing. Once inside, the appellant pulled a pistol from under his shirt and threatened the store manager, Michael Crumpton. The appellant then forced Judy Crumpton, Michael's wife, to open the cash drawer and the safe, which was not locked. While the appellant and the others took the money and left, they made Mr. and Mrs. Crumpton lay on the floor with a coat over their heads. The complete robbery took about five minutes.
Immediately after the robbery, the Crumptons gave a description of the robbers to the police. Thereafter they made separate, positive identifications of the appellant from both a photographic display and a line-up. Following his arrest, the appellant made a signed statement to the Birmingham police in which he admitted participation in the robbery, although only as a "lookout".
Although the admissibility and validity of both the identification and confession were considered in a pretrial hearing, the record contains no motion to suppress, no motion to exclude, no motion to strike, or objection to the in-court identification or the pretrial identification procedures. A verbal motion to exclude was interposed to the admissibility of the confession at the close of the preliminary hearing.
 I
The first alleged error complained of by the appellant is that of the trial court when it did not exclude the in-court identification of the appellant by Mr. and Mrs. Crumpton. The appellant asserts that the pretrial line-up and picture showing were so impermissibly suggestive as to have tainted the in-court identification of the accused.
At the pretrial hearing both of the Crumptons testified that they were separately given a stack of ten to fifteen color pictures by a police officer about a week or a week and a half after the robbery. The photographs were all of black males of similar height and weight, although the appellant was the only person depicted with a scar on his left cheek. No suggestive comment was made by the police officer before or during the viewing of the photographs to indicate that any particular individual in the group was one of the robbers. When the Crumptons viewed the photographs they were looking for any of the three robbers. Mrs. Crumpton did testify that the police sergeant told her before she saw the photographs that, based on her description, he "had some idea" who robbed her "or had someone in mind". The Crumptons had described the robbers to the police on the day of the robbery. The sergeant simply indicated that he had a suspect in the group of pictures. Both Mr. and Mrs. Crumpton positively identified the appellant. They asked and were told that the man they had identified was Joseph Carl Jackson, the appellant.
Mr. Crumpton testified that he observed the appellant at close range during the course of the robbery for at least two minutes. Mrs. Crumpton stated that she viewed the appellant at close range and *Page 1154 
observed him for five minutes during the robbery.
Before being shown the pictures, the Crumptons discussed the description of the robbers between themselves and their descriptions were "approximately the same".
Mr. Crumpton, after identifying the appellant, told the police that if they arrested someone who might possibly be a suspect, he would like to see them in a line-up. About two weeks later the Crumptons did view a line-up. Mr. Crumpton testified that when he was called to view the line-up, he knew an arrest had probably been made but had no idea which one of the three robbers had been arrested. Again, both Mr. and Mrs. Crumpton separately viewed a group of individuals with similar physical characteristics. Both, without hesitation, positively identified the appellant as one of the robbers. No one suggested that anyone in the line-up was a suspect. After Mrs. Crumpton identified the appellant as one of the robbers, a police officer said, "Well, that is the man we are looking for".
On the day of the trial, Mr. Crumpton saw the appellant in handcuffs in the courtroom.
The appellant submits that the totality of the circumstances dictates that both the pretrial photographic display and the line-up were impermissively suggestive and that these defects tainted the in-court identification of the appellant. The appellant argues seven circumstances which tainted the in-court identification: (1) Before Mrs. Crumpton viewed the photographic display, she was told by a police officer that he had a suspect in the group of pictures she was about to view and that he had some idea of who had robbed her according to the descriptions she had given the police; (2) the appellant was the only one in the photograph and the line-up with a scar on his left cheek; (3) the appellant was identified to the Crumptons by name after they had selected his picture; (4) the police advised Mr. Crumpton that if they arrested anybody that could possibly be a suspect in the case, he and his wife would probably be called for a line-up; (5) no one else in the photographic spread or in the line-up fit the description of the appellant; (6) after identifying the appellant in the line-up, a police officer said to Mrs. Crumpton, "Well, that is the man we are looking for"; and (7) prior to the in-court identification, Mr. Crumpton saw the appellant in handcuffs in the courtroom.
An in-court identification is inadmissible if it is so tainted by previous, impermissibly suggestive photographic or line-up identification that the origin or source of the in-court identification was not independent of the line-up.Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401;Fletcher v. State, Ala.Cr.App., 337 So.2d 58, and cases cited therein at 337 So.2d 60. In determining whether the in-court identification is admissible the "totality of the circumstances" must be considered to determine first, whether the police procedures used in obtaining the identification were impermissively suggestive and then, whether, being so they created "a substantial risk of misidentification". Stovall v.Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199; Simmons v.United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247;United States v. Kimbrough (CA 5), 481 F.2d 421, cert. denied,414 U.S. 1114, 94 S.Ct. 845, 38 L.Ed.2d 741 (1973); UnitedStates v. Henderson, 489 F.2d 802 (5th Cir. 1973); Childers v.State, Ala.Cr.App., 339 So.2d 597.
Here the police officer merely told one of the identifying witnesses that based on the description she had previouslygiven the police, he had a suspect in the group of photographs he handed her to view. He did not indicate in any manner which individual he suspected. We find that the police officer was merely stating the obvious. The very purpose of a photographic display is to assist in the apprehension of offenders. Simmons, supra. It would be a useless law enforcement procedure if a police officer showed a victim or a witness a spread of photographs where, based on a description previously furnished him, he suspected none of the individuals depicted. Despite some of the appellant's contentions, the testimony shows that all of the photographs were *Page 1155 
fairly representative of the appellant except for the scar. The statement of the police officer was not impermissibly suggestive.[1]
The fact that the appellant was the only person depicted with a scar does not impress this court. There was testimony that the scar was only faintly visible on the photograph. Also, it appears that the scar was not the sole basis on which the appellant was identified. Moreover, as a practical factor in matters such as this where the accused has a distinctive physical characteristic, it would often be impossible for the police to obtain a perfectly balanced photo spread.
After the Crumptons identified the appellant as one of the robbers, they asked for and were given his name. Under the circumstances of this particular case, this point is insignificant. From the record it does not appear that the appellant's name had anything to do with any identification of him by the Crumptons at any time. Knowing the appellant's name did not taint the line-up identification because when called to view the line-up, the Crumptons did not know which one of the three robbers had been apprehended.
Here the Crumptons were looking for three individuals and not just for the appellant. Both victims viewed the pictures separately and individually and positively identified the appellant. Both victims had ample opportunity to view the victim at close range during the commission of the robbery. Following the crime, both victims gave descriptions of the three robbers, including the appellant, to the police. There is no evidence that these descriptions were ever changed or altered. Under these circumstances, the photographic identification procedures employed here were not impermissively suggestive nor did they present any basic unfairness to the appellant.
 II
Approximately three weeks after the robbery, Mr. and Mrs. Crumpton separately and positively identified the appellant in a line-up. Objection is had to the line-up procedure (1) because the police told Mr. Crumpton that "if they had arrested anybody that could possibly be a suspect in the case they would probably call (him) in for a line-up", and (2) because after Mrs. Crumpton had identified the appellant in the line-up, a police officer stated, "Well, that is the man we are looking for".
This court addressed itself to the first objection inFletcher v. State, Ala.Cr.App., 337 So.2d 58, wherein Judge Clark stated:
 "A lineup is not a test run, a fire drill, or an academic proceeding. The victim of a crime has the right to assume when asked to come to a lineup that he is not being toyed with, that there is more than an infinitesimal chance of a member of the lineup being the criminal, which would be true of a lineup in which no one who arranged it suspected or had any reason to suspect that the criminal had been apprehended. It is perfectly natural for persons called to view a lineup to understand that a suspect is in the lineup. That they are told that he is, by someone connected with the lineup, although generally inadvisable, does not contaminate the proceeding. Furthermore, in a dialogue relative to a lineup, it is readily understandable that the passive one of the two would interpret the language of the other to the effect that a suspect, or that even the guilty person, would be in the lineup, even though such other person had not so expressed himself." *Page 1156 
The fact that a police officer stated, "Well, that is the man we are looking for" after Mrs. Crumpton identified the appellant in the line-up is without consequence here. Taken in itself, the phrase apparently indicates nothing more than the fact that Mrs. Crumpton had made a positive identification of someone in the line-up. This court has recently held that an officer's statement to a witness after a line-up that "that's the suspect we had" was not unduly suggestive. Swicegood v.State, Ala.Cr.App., 34 So.2d 806, 1977. Certainly the statement there was more suggestive than the one found here.[2]
Considering the totality of the circumstances presented here, we find that the identification processes employed were not impermissively suggestive and did not present a substantial likelihood of misidentification. Cross-examination by defense counsel did not shake the identification testimony of the Crumptons. Neil v. Biggers, supra, sets out the factors which must be considered when evaluating the likelihood of misidentification. Childers, supra. These factors include the opportunity of witnesses to view the criminal at the time of the crime, the witnesses' degree of attention, the accuracy of the witnesses' prior description of the criminal, the level of certainty demonstrated by the witnesses at the confrontation, and the length of time between the confrontation and the crime. These and other factors we have examined in evaluating the likelihood of impermissible suggestiveness and misidentification preponderate heavily in favor of the trustworthiness of the testimony as to identify. It is the likelihood of misidentification which violates a defendant's right to due process. We find that such likelihood is not present in this case. The trial Judge was correct in permitting the in-court identification.
 III
The second alleged error complained of by the appellant is that the trial Judge made certain remarks to the jury which were prejudicial and prevented him from receiving a fair trial.
After the jury was struck, the court made the following remarks to that jury:
 "THE COURT: Ladies and gentlemen, this is Wednesday afternoon. And I hate to be the bearer of bad tidings to you. On Monday everybody seems to want on a jury. Toward the end of the week, they kind of not want to get on a jury. But this case is important as any case we have on the docket.
 "I mean, they are all important. It is a serious case, robbery. The minimum sentence is ten years. It is a serious offense. And this case will not be a long case, I'm sure of that. But throughout the course of this trial, this jury will be sequestered."
Any declaration of the court prejudicing the defendant in the minds of the jury is error which would of necessity effect a reversal. Jarmon v. State, Ala.Cr.App., 333 So.2d 897. Here the remarks of the trial Judge were in no way prejudicial to the appellant's case. The statement read in the context in which it is quoted is self-explanatory. Having reviewed the entire transcript, we find that the trial Judge used the greatest care to avoid prejudicing the cause of the accused or of the State by his language or conduct.
We have searched the entire record for any and all error prejudicial to the appellant and have found none. Therefore, it is the opinion of this court that this case is due to be and is hereby
AFFIRMED.
All Judges concur.
[1] See Drewry v. Commonwealth, 213 Va. 186, 191 S.E.2d 178
(officer told witness that assailant was among those pictured);Commonwealth v. Bumpus (Mass.), 290 N.E.2d 167, vacated on other grounds, 411 U.S. 945, 93 S.Ct. 1941, 36 L.Ed.2d 407, (officer told witness that the defendant was in the photograph of a line-up shown to the witness); even where the other photographs did not exactly look like that of the accused.State v. Davis, 25 N.C. App. 256, 212 S.E.2d 680 (police officer mentioned that he had possible suspect among photographs shown to witness).
[2] See also U.S. v. Person, 155 U.S.App.D.C. 455, 478 F.2d 659
(detective's remark to witness that she had done well in making her identification was better left unsaid, but was not action that materially affected witness' certainty as to identification); State v. Cameron, 216 Kan. 644, 533 P.2d 1255, (no prejudice resulted where detective observed two robbery victims after line-up identification that they had identified the two subjects who had been arrested); U.S. v. Sanders
(D.C.Pa.) 322 F. Supp. 947, aff'd (CA3) 459 F.2d 86 (where officer told witness prior to line-up that person witness had identified through photographs had been apprehended. Line-up not thereby rendered unfairly suggestive). *Page 1157