LEIGH M. CLARK, Retired Circuit Judge.
For the purpose of a correct understanding of appellant’s contentions on this appeal from a judgment and sentence of fifteen years imprisonment for robbery, we quote from his STATEMENT OF FACTS:
“On the 6th day of July, 1979, John Griffin [the alleged victim] and Billy Wayne Davis, employees of the Sonic Drive-In, were closing the restaurant around 12:30 a. m. when two men allegedly appeared and demanded their money. One of the men was armed with a rifle and was wearing dark clothing. The other person was wearing light clothing. During the course of the robbery, two Lanett policemen drove up, and the two men fled on foot behind the restaurant into a wooded area. The officers chased the fugitives, but they did not apprehend them.
“Adjacent to the Sonic Drive-In was a vacant parking lot and a building called the Snow Cap Drive-In. The parking lot was customarily filled with unattended parked cars. During the course of the chase, the officers observed an unattended car in the Snow Cap Drive-In parking lot, and they went over, looked into the car and removed an Alabama driver’s license from the vehicle. Officer Hutchi-son then showed the drivers license to the employees of the Sonic Drive-In, and they identified the picture on the license as the one who robbed them. Later that day, Billy Wayne Davis was taken to the police station and was shown a mug shot of Lewis Floyd, Jr. whom he identified as one of the robbers. During the afternoon of July 6, Lewis Floyd, Jr. was picked up and arrested by the Lanett Police and was taken into custody. At the police station, Floyd informed the investigators that he desired a lawyer to be present at the station. However, a lawyer was not furnished, and he was promptly placed in a line-up and was identified by John Griffin who had previously been shown Floyd’s drivers license . . . .”
During lengthy testimony and argument on a pretrial motion to suppress evidence as to the identification of defendant, he contended “that the whole identification process is tainted.” He particularized the grounds for his contention by urging (1) that the testimony by Griffin and Davis as to the identity of defendant as one of the robbers was tainted by the fact that they had been shown the driver’s license picture of defendant that the officers had taken from the unattended automobile and (2) that the in-court identification of defendant by John Griffin was additionally tainted by a lineup procedure subsequent to his seeing the photograph of defendant on the mentioned driver’s license, at which lineup defendant was not afforded a lawyer, as requested by him.
The trial court overruled defendant’s motion to suppress the testimony of the witnesses as to their identifying defendant at the time and place of the robbery as one of the robbers, but in doing so the trial court said, inter alia:
“Motion is granted with respect to paragraph 2, that is, any testimony with re *293 spect to identification made pursuant to a lineup, is suppressed. The lineup being held in violation of the constitutional rights of this defendant, subsequent to the time that he requested a lawyer. All right, what about paragraph 1.

“Motion is granted with respect to paragraph one, to the extent that the State cannot offer any evidence with respect to the driver’s license. However, I believe there is enough independent testimony with respect to the witness’ ability to identify this defendant, separate and apart from the lineup, and separate and apart from the driver’s license, to let that question of identity go to the jury.”
In somewhat of an anomaly, though an understandable one, appellee takes the position that the trial court was in error in a part of its rationale as to each of the rulings complained of by appellant but that there was no error committed in either of the actual rulings. Appellee says that there was no unconstitutional search of the unattended automobile, or seizure of defendant’s driver’s license and picture therein, and that there was no violation of defendant’s constitutional right to an attorney at the time he was viewed in a lineup.
Notwithstanding the strong argument of appellee to the effect that there was no unconstitutional search or seizure, we find it unnecessary to decide that question. We find that aside from such question, there is no legal basis for holding that the in-court identification by either Griffin or Davis of the defendant as one of the persons who committed the particular robbery was tainted by his having observed at the scene of the robbery defendant’s photograph, whether such photograph was unconstitutionally seized or not. There is no causal connection per se between any unconstitutional seizure of the photograph of an accused and the identification by an eyewitness to a crime of the person whose picture he sees as the one who committed the crime. The injustice to be thwarted in permitting a witness to make an in-court identification of defendant when he has previously made an out-of-court identification of him by a picture or otherwise is the substantial likelihood of irreparable mis-identification by reason of impermissibly suggestive pretrial identification. The fact that a particular picture has been illegally taken, or even stolen, does not in and of itself connote that suggestiveness that is a material factor in the creation of a situation tending to lead to a misidentification. There is nothing in the record to indicate that there was any suggestive conduct on the part of the officers. Indeed, there is no contention to that effect. The particular contention of appellant is, as it was on the trial, that the fruit of the poisonous tree doctrine finds application in the claimed unreasonable search and seizure as the poisonous tree and the identification as a fruit thereof. Assuming the existence of a poisonous tree in an unreasonable search and seizure, the in-court identification was not a fruit thereof.
In the orchard nurtured by the judicial department of government, the tree of impermissible suggestiveness is not the only “poisonous tree.” There are others that bear fruit after their kind. Since Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933 (1961), courts of Alabama have recognized and treated an unconstitutional search and seizure as such a tree. Duncan v. State, 218 Ala. 145, 176 So.2d 840, 865 (1965); Davis v. State, 44 Ala.App. 145, 204 So.2d 490, 494 (1967); Owens v. State, 51 Ala.App. 50, 282 So.2d 402, 413 (1973), cert. denied, 282 So.2d 417 (La.). Even so, the fact that there had been a violation of defendant’s right to security against an unconstitutional search and seizure did not preclude admission in evidence of all evidence tending to show he had committed a crime. For the search or seizure to be a barrier to the evidence, there must be a causal relationship between it and the evidence. It must be more than a mere condition, a mere coincidence or antecedent.
The fruit of the poisonous tree in unconstitutional search and seizure cases is readily observable in the actual objects *294 seized or found. Evidence as to them is not admissible. They are the direct result of the unconstitutional conduct. In some cases the inhibition has been extended to the fruit or results that are not as closely related to such conduct. The Supreme Court spoke to this point in Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441, 455 (1963) as follows:
“. . . [N]or is this a case in which the connection between the lawless conduct of the police and the discovery of the challenged evidence has ‘become so attenuated as to dissipate the taint.’ Nardone v. United States, 308 U.S. 338, 341, 84 L.Ed.2d 307, 312, 60 S.Ct. 266. We need not hold that all evidence is ‘fruit of the poisonous tree’ simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is ‘whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.’ Ma-guire, Evidence of Guilt, 221 (1959). We think it clear that the narcotics were ‘come at by the exploitation of that illegality’ and hence that they may not be used against Toy.”
We take it that it is conceivable that the officers in showing the victim the driver’s license picture of defendant found in the motor vehicle could have been guilty of “exploitation” thereof, but there is no contention to that effect and there is no semblance of evidence to support such a contention. We can hardly conceive of any exploitation other than some in the nature of “impermissible suggestiveness,” as to which, as we have already noted, there is none shown or suggested in the record.
Appellant seeks also to apply the fruit of the poisonous tree doctrine to the in-court identification of defendant by charging that such identification was the fruit of an unconstitutional lineup in which defendant appeared at jail the day after the night of the robbery. The trial court ruled with him as to the question of the constitutionality of the lineup and suppressed evidence with reference to the lineup, but it ruled against defendant in declining to suppress as evidence the in-court identification of defendant as one of the robbers. It is undisputed that no attorney for defendant attended the lineup, but the record is not as clear as it should be as to whether there had been any express or implied request that an attorney for him attend the lineup. There is some evidence to the effect that before 'he lineup was conducted he had requested a lawyer. On the other hand, at that time he had signed a written statement as a preliminary to any questioning of him by officers, which concluded:
“I do not desire the service of an attorney before being questioned, and agree that any statement made by me is of my own freewill.”
The pertinent facts as to any attorney-client relation are vague, but the law is clear as to whatever that situation may have been at the time, as stated in Sparks v. State, Ala.Cr.App., 376 So.2d 834, 841 (1979):
“Appellant contends that his constitutional rights were violated when he was placed in a lineup in the absence of his counsel. He relies on Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178. Gilbert involved a post-indictment lineup and reliance on it in this case is misplaced. The lineup in the instant case was a pre-indictment lineup. There is no constitutional right to counsel at a pre-indictment lineup. Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411; Deloach v. State, Ala.Cr.App., 355 So.2d 222. Ala.Digest, Crim. Law <®=641.2.
“Though in this instance, the defendant did not have the right to counsel furnished to him by the State, he had employed counsel and had a right to have him present. The record reflects that the defendant voluntarily, knowingly, waived the presence of counsel. When the officers attempted to phone the defense counsel, the defendant stated, ‘Let’s go *295 ahead and get this thing over with; I’m smarter than the damn lawyer anyway. Let’s get it over with.’ Upon examination by the court the defendant testified that he understood his rights and had understood them since at least 1974 and probably since he was in junior high school. The defendant was not denied right to counsel if he intelligently and understandingly rejected offer of counsel. Henry v. State, 46 Ala.App. 176, 239 So.2d 318; Ex parte Allison, 42 Ala.App. 507, 169 So.2d 436; Smith v. State, 49 Ala.App. 147, 269 So.2d 164.”
Whether the trial court was correct in its ruling in favor of defendant that the lineup procedure was unconstitutional and that evidence as to the lineup identification should be suppressed is not necessary for us to determine in order to determine correctly whether the in-court identification should have been suppressed. Here again, there was no causal connection between the tree (a lineup without the attendance of counsel) and the fruit (the in-court identification). There is no contention that there was any impermissible suggestiveness about the lineup that could have tainted the in-court identification.
For the reasons stated, we hold that the in-court identification by witnesses of the defendant as one of the robbers was not the fruit of any poisonous tree, either impermissible suggestiveness, an unreasonable search and seizure, or an unconstitutional lineup. In addition, it is clear that there was no error in the admission in evidence of any in-court identification for the reason that, as held by the trial court, the in-court identification by each witness was independent of all considerations other than those perceived and comprehended by each of them at the time and place of the crime.
We find no error in the record prejudicial to defendant. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur.