Appellant was indicted by the Chambers County Grand Jury for robbery. After trial before a jury, appellant was found guilty and sentenced to thirty years' imprisonment. This appeal followed.
Mr. Hugh Poole, owner and operator of Poole Standard Service Station in the city of Lanett, Chambers County, Alabama, arrived at his station at 6:30 on the morning of June 8, 1979. As he began adding his checks from the previous day, a dark blue or black Chevrolet occupied by two black men pulled up and stopped in front of his station. One of the black men, identified by Mr. Poole as the appellant, asked if the station was open. Mr. Poole replied it was not open but that it would be in a few minutes. Appellant then asked Mr. Poole if they could get a tire repaired. Mr. Poole stated his help had not arrived, but that the help would be there in a little while and they could leave the tire to be repaired. The two men then drove 20 feet, stopped, and then backed up to the sales office door. One of the men got out of the automobile, came into the station, looked around as if to buy something, and then went back to the vehicle. The appellant then reached into the back seat and pulled out a shotgun. He pointed it at Mr. Poole, told him he was being robbed, and that if he tried anything he would be killed. The appellant held the shotgun on Mr. Poole's head, while the accomplice came into the station. They took $700.00 in currency from the cash drawer, $240.00 in currency from Mr. Poole's wallet, $789.64 in checks, and Mr. Poole's wallet and watch. The appellant took Mr. Poole's glasses off and told his accomplice to take Mr. Poole's pistol. Mr. Poole stated he observed the appellant for 30 seconds before appellant reached and removed his glasses. Mr. Poole positively identified the appellant in court as the gunman from the robbery.
After the men robbed Mr. Poole, they took him back into a storage room, bound him with an electric cord, and left him lying on the floor. Mr. Poole then worked his feet loose, went to the phone, and called the police who arrived within minutes. Mr. Poole told police the appellant appeared to be 5' 8" and weighed 175 or 180 pounds.
Officer Jimmy Pogue testified he responded to a call to report to Poole Standard Service Station at 7:00 a.m., on June 8, 1979. He found Mr. Poole standing at the door of the station with his hands bound by an electrical cord. Officer Pogue untied Mr. Poole and then called Investigator Richard Bolt to take over the investigation. The state rested at the close of Officer Pogue's testimony.
Appellant's motion for a directed verdict was denied by the trial judge, and appellant called Josephine Floyd, appellant's wife, to testify. She testified appellant followed his usual morning work day routine on June 8, 1979 and that he did not arise until 7:00 a.m., and did not leave for work until 7:30 or later. She testified Lanett is a twenty minute drive from their home.
 I
Appellant contends he was forced to participate in a pre-indictment lineup without benefit of counsel and thereby was denied due process of law. The trial court denied appellant's pretrial motion to suppress the pretrial identification testimony concerning the appellant, after an extended hearing on the same. The appellant testified in support of the motion that he had requested and been denied assistance of counsel prior to being forced to participate in the lineup procedure. Officer Richard Bolt testified that the appellant had been advised of his constitutional rights before the lineup and had then been requested to participate in the lineup. *Page 828 
The state in its case made no mention or reference to the pretrial lineup identification, but rather relied solely upon the victim's in-court identification of the appellant as the man who robbed him.
An accused is not entitled to have counsel provided for him at a pre-indictment lineup. Hatchet v. State, Ala.Cr.App.,335 So.2d 415 (1976). However, he does have the right to have his own employed counsel present upon request. Sparks v. State, Ala.Cr.App., 376 So.2d 834 (1979). The record is not clear as to whether appellant indeed had retained counsel, or if he requested or waived the presence of his attorney. Even so, where the in-court identification of an accused is founded upon clear and convincing evidence based upon observation of the accused, prior lineup identification without counsel's presence does not require reversal. Hatchet, supra; Sparks, supra.
In the instant case, the victim observed the appellant at close range for half a minute as he held a shotgun on him and demanded his money before he removed Mr. Poole's glasses. As well, Mr. Poole observed him during the period prior to the actual robbery as the appellant stopped at the service station to ask for assistance with a tire. The record reflects Mr. Poole's testimony as follows:
 "A. The other one came on in, this one held the shotgun right at my head — I started to get the money out of the cash drawer myself, and he reached and got the whole thing and set it out. Reached and got the checks, my watch off my arm, my glasses off my head, and he said to the other one `Get his pistol', I had a holster laying on the desk there. He said, `Give me your pistol'. I stood up, I hadn't even went for my pistol or anything, I stood up and told him to get it, it was in my right pocket.
 "Q. Now, before he took your glasses off, did you have an occasion to look at the person who had the gun?
"A. Yes, sir.
"Q. How long did you have an occasion to look at him?
"A. I'd say, thirty seconds.
 "Q. Do you know whether or not, the person that had the gun was the person who asked you whether or not you were open? Do you know that?
"A. Yes, sir.
"Q. Was he or not?
"A. Yes, sir.
"Q. He was?
"A. Yes, sir.
 "Q. Do you know whether or not the one that had the gun was the one that asked you whether or not you could fix a flat?
"A. Yes, sir.
"Q. He was?
"A. Yes, sir.
 "Q. And the person that had the gun is the one that told you he was going to rob you?
"A. Yes, sir.
 "Q. Look around the courtroom and see if you can identify or see that person in the courtroom here today.
"A. Yes, sir.
"Q. Where is he?
"A. Sitting over there at that table.
 "Q. That's the person that had the gun pointed at your head telling you he wanted your money?
"A. Yes, sir.
"Q. You are absolutely sure of that.
"A. Yes, sir.
 "Q. After they got the money and the other property you described —
 "COURT: Let's let the record show that the witness has pointed to the defendant, Lewis Floyd, Jr."
The record indicates the basis for Mr. Poole's identification of the appellant was founded upon observation independent of the pre-indictment lineup. We find there was no error precipitated by the lineup or the in-court identification in that there was a sufficient basis for Mr. Poole's in-court identification independent of all considerations other than those perceived and formed by him at the time and scene of the robbery. Floyd v. State, Ala.Cr.App., 387 So.2d 291 (1980). *Page 829 
Appellant's second ground argued as reversible error flows from the same pretrial lineup. He contends the manner in which the lineup was conducted was so impermissibly suggestive as to give rise to irreparable mis-identification. Testimony of the lineup identification was elicited by appellant's counsel on cross-examination and during the presentation of appellant's case. The state made no use of the lineup identification in presenting its case.
The record indicates the participants in the lineup were of the same race and general description. Four sanitation workers dressed in work clothes, not uniforms, participated. The appellant was similarly dressed, possibly having worn cut-off pants, but with a cleaner tee shirt than the sanitation workers who were in the middle of their work day. While the appellant's foot was bandaged, testimony indicated it was not visible to the witnesses from their viewpoint. Nothing was said to the witness to indicate that a particular suspect was included in the lineup, nor that the appellant was the subject the police believed was guilty. Neither was the witness shown any photographs of the appellant at the police station before he was allowed to view the lineup. The appellant was not made to wear any item of clothing associated with the robbery, nor was he requested to do or say anything apart from the other subjects. Testimony indicated the witness was able to make a positive identification of the appellant at the lineup. While Mr. Poole did view the photographic array of mug shots from a mug book several days before the lineup, testimony indicated he was not shown the appellant's driver's license or his photograph, nor was the appellant identified by the police to Mr. Poole as the suspect before the lineup.
We do not find the evidence adduced concerning the lineup indicated any unconstitutionally suggestive action which would have tainted the lineup identification, or the subsequent in-court identification of the appellant by Mr. Poole. Floyd v.State, supra. And, as we stated hereinabove, the in-court identification was based upon independent observation of the witness separate and apart from the pretrial lineup. The appellant was afforded a pretrial hearing by the trial court on possible suggestiveness affecting the lineup and the trial court correctly found no unconstitutional misconduct.
Appellant asserts that his driver's license photograph was shown to Mr. Poole immediately before the pre-indictment lineup. He argues that this picture was obtained during an illegal search and seizure, and that hence its use in the identification procedure was a use of the "fruit of the poisonous tree" which unconstitutionally tainted the identification. We point out first that both Mr. Poole and the officer alleged to have shown the picture to Mr. Poole denied that any such action ever took place. Additionally, Mrs. Floyd, the appellant's mother, who testified appellant's picture was shown to Mr. Poole before the lineup, did not identify the photograph as appellant's driver's license, but merely as a "picture of Lewis." Finally, evidence presented in the record concerning the alleged illegal search and seizure is far from informative. Reference was made, during the pretrial hearing on appellant's motion to suppress, to an earlier trial in which the judge and counsel participated involving appellant and the search and seizure. This issue was treated in Floyd v. State, supra, and we pretermit further discussion of this issue in the instant case. The driver's license appears not to have been used in the instant case for any purpose, either as evidence or for identification purposes, and we find no basis therefore for reversal.
The record reflects the following exchange during the prosecution's closing argument:
 "Here's a man that has a certain pattern, so she says, every morning. Well, what pattern did he have the day he was involved in another offense that Mr. Jones brought up to you.
"TOM JONES: Object to that Your Honor.
 "R.C. WALLACE, JR.: You're the man that brought it out. *Page 830 
"TOM JONES: Move for a mistrial, Your Honor.
 "R.C. WALLACE, JR.: You're the man that brought it up or I would have never said it.
"TOM JONES: May I approach the bench, Your Honor?
"COURT: Come on around.
 "TOM JONES: Your Honor, I move for a mistrial, this is highly prejudicial, it was not brought out in the trial at all, it was on an evidentiary hearing, it was not involved in the trial.
 "R.C. WALLACE, JR.: Why in your opening statement you said it.
 "TOM JONES: I want the record to show what he said to the jury and I move for a mistrial.
 "MITCH GAVIN: Your Honor, he even went so far as to say he was picked up on 2/11 of this year.
 "TOM JONES: I did not, he was not picked up on 2/11 of this year. He was identified on 2/11 when he was in jail awaiting this trial. Furthermore, there was no such statement made in my opening statement and I move for a mistrial.
"COURT: Do you have the opening statement?
"COURT REPORTER: I do.
 "COURT: I am going to deny your motion for a mistrial.
 "TOM JONES: Your Honor, I would ask the court to instruct Mr. Wallace not to make any further statements along these lines.
 "COURT: Don't make any statements about any other possible offenses. Motion for mistrial is denied. You members of the jury, I instruct you that we are here today to try only one case, that's the case in which this defendant is charged with having robbed Hugh Poole. So, totally disregard any testimony or any statements or any argument that might have been made by any of the lawyers with respect to any other conduct on the part of this defendant. Just consider the charge which is on trial here today. Put out of your minds and totally disregard any other charges that may have been pending, or may not have been pending against him."
It appears there may have been some confusion created in the instant trial by references made to appellant's prior mistrial for the same crime involved in the instant case. Whether or not any other previous crime was mentioned by appellant's counsel during the trial, the trial court's action in immediately instructing the jury to disregard the prosecution's vague reference to another unspecified crime cured any potential error prejudicing the appellant's case. Diamond v. State, Ala.Cr.App., 363 So.2d 109 (1978).
No prejudicial error to the substantial rights of the appellant having been found, this case is due to be affirmed.
AFFIRMED.
All the Judges concur.