**UNITED STATES of America**
**v.**
**John D. EHRLICHMAN et al.**
**Crim. No. 74–116.**

United States District Court,
District of Columbia.

July 3, 1974.

William H. Merrill, Charles Breyer, Philip Bakes, Philip Heymann, Watergate Sp. Prosecution Force, Washington, D.C., for the United States.

Peter L. Maroulis, Poughkeepsie, N. Y., Charles F. Barker, Washington, D.C., for defendant G. Gordon Liddy.

## MEMORANDUM AND ORDER

GESELL, District Judge.

Defendant Liddy, by his counsel, has orally moved to strike the testimony of E. Howard Hunt, a Government witness, at the conclusion of his direct testimony on the ground that prior testimony of Hunt given under oath in executive session before the Subcommittee on Intelligence of the House Armed Services Committee last year has not been produced, in alleged violation of Liddy's rights under the Jencks Act, 18 U.S.C. § 3500, Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and the Fifth and Sixth Amendments to the Constitution of the United States. Earlier, defendant Liddy had caused a subpoena *duces tecum* covering the transcript of that testimony to be served on counsel for the Subcommittee and, following a negative response by the Chairman, see appended letter, defendant caused a second subpoena to be served on the Honorable Carl Albert, Speaker of the House. Although the Court and the Special Prosecutor also requested that the testimony be produced, at least for the Court's *in camera* inspection, the Chairman of the Subcommittee has rejected these requests. Instead, in accordance with House Resolution 12, 93d Cong., 1st Sess., 119 Cong.Rec. H. 19–20 (daily ed. Jan. 3, 1973),* both subpoenas are being held by the Speaker pending action by the House, which apparently is not contemplated in the foreseeable future. *See* 116 Cong.Rec. 37652–54 (1970), for an example of similar action with regard to subpoenas issued during the military trials of Lieutenant William Calley and Staff Sergeant David Mitchell.

The Special Prosecutor does not possess or have access to the subpoenaed testimony, and no specific showing has been made as to its contents. However, it appears to have dealt, in part and long after the events, with the intelligence community's role in the Fielding break-in, which bears upon the issues in this case, and it is apparently being sought solely because it may contain statements by Hunt of possible value on cross-examination.

* This resolution applies only to the present, Ninety-third Congress, but an identical reso- lution has been passed at the beginning of each Congress in recent years.

■■ The Court concludes that the Jencks Act does not apply to the requested material. While the Act probably contemplates disclosure by all Executive investigatory agencies, *Augenblick v. United States,* 377 F.2d 586, 597–598, 180 Ct.Cl. 131 (1967), rev'd on other grounds, 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969), there is no indication that Congress intended it to encompass its own legislative proceedings held in executive session, and its previous and continued resistance to subpoenas *duces tecum* argues strongly to the contrary. *See authorities cited in* Nixon v. Sirica, 159 U.S.App.D.C. 58, 487 F.2d 700, 715 n. 70, 738–740, 772–773 (1973).

■ Nor does *Brady* apply. The subpoenaed testimony is not in the possession of the Government within the meaning of that decision, since the Subcommittee is neither an investigative or a prosecutorial arm of the Executive branch nor an agency of the Government in any way involved in the offense or related transactions. *See* United States v. Deutsch, 475 F.2d 55, 57 (5th Cir. 1973); United States v. Bryant, 142 U.S.App.D.C. 132, 439 F.2d 642, 650 (1971).

■ The only other constitutional principle that might justify production of the subpoenaed testimony is the defendant's Sixth Amendment right in this criminal proceeding "to have compulsory process for obtaining witnesses in his favor." Under this provision, the Court must enforce a defendant's subpoena for testimony or documents "essential to the defense," United States v. Schneiderman, 106 F.Supp. 731 (S.D.Cal.1952); *See also* Washington v. State of Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); United States v. De Stefano, 476 F.2d 324, 330 (7th Cir. 1973), and such process may even run to the Members of Congress, United States v. Cooper, 4 U.S. (4 Dall.) 341, 1 L.Ed. 859 (1800). However, no such showing of need has been made in this case. Hunt has testified numerous times on the same subjects under oath, and de-

fendant has had full access to this other testimony. Moreover, unlike the *Brady* rule which requires dismissal if the requested material is not produced, or the Jencks Act which requires mistrial or the striking of the witness' testimony, the right to compulsory process requires only that the Court use its best efforts to procure the subpoenaed documents. If that material is rendered unavailable by loss or by the valid exercise of a privilege, the defendant has no constitutional right to a remedial order unless such unavailability also raises *Brady* or Jencks Act problems. Smith v. United States, 385 F.2d 34, 38 n. 12 (5th Cir. 1967); Johnson v. Walker, 199 F.Supp. 86, 95 (E.D.La.1961), aff'd 317 F.2d 418 (5th Cir. 1963); United States v. Di Gregorio, 148 F.Supp. 526, 528 (S.D.N.Y. 1957).

■■ In the instant case, defendant Liddy seeks a transcript of secret, executive session proceedings before a House subcommittee. That transcript has been placed in the possession of the Speaker and can only be released upon a vote of the whole House. Congress' right to invoke such a privilege with regard to verbatim transcripts of its executive proceedings would appear to be established by the Secrecy Clause in Article I, Section 5, Clause 3 of the Constitution. United States v. Calley, 8 Crim.L.Rep. 2055 (Army GCM, 5th Jud. Cir. Oct. 13, 1970). Moreover, since the requested transcript would reveal "the deliberative and communicative processes by which Members [of Congress] participate in committee and House proceedings . . . . ", judicial efforts to compel production of that document would, under the present circumstances, also violate the Speech and Debate Clause, U.S. Const. art. I, § 6, cl. 1. That provision clearly prohibits the Court from forcing the Chairman of the Subcommittee or the Speaker to answer questions concerning the testimony at issue, Gravel v. United States, 408 U.S. 606, 616, 92 S. Ct. 2614, 33 L.Ed.2d 583 (1972), and it would appear to follow that they cannot be required to produce at trial the offi-

cial record of that testimony or to put the issue to a vote of the full House. *See also* United States v. Brewster, 408 U.S. 501, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972); United States v. Johnson, 383 U.S. 169, 86 S.Ct. 749, 15 L.Ed.2d 681 (1966).

Under the circumstances, further proceedings to enforce the subpoenas would be futile and the motion is accordingly denied. However, the Court most respectfully reiterates its request that the House of Representatives, in accordance with its rules and procedures, produce the subpoenaed testimony for *in camera* inspection by the Court on the assurance that only those questions and answers, if any, which prove significant and material to the defense would be disclosed.

So ordered.

## APPENDIX

### June 6, 1974

The Honorable Gerhard A. Gesell                    Cr. 74–116
United States District Judge
Washington, D.C.

Dear Judge Gesell:

On June 5, 1974 Mr. William H. Hogan, Jr., an employee of the House Armed Services Committee, was served with a subpoena duces tecum commanding that he appear in the United States District Court for the District of Columbia at Courtroom 6 at 9:30 a. m. to testify in the case of United States v. John D. Ehrlichman et al. and bring with him transcripts of enumerated testimony which are in the Committee files. The subpoena was issued upon application of G. Gordon Liddy. A copy of that subpoena is attached hereto.

The testimony subpoenaed was taken in executive session during hearings of the Special Subcommittee on Intelligence of the House Armed Services Committee and remains executive session material. In accordance with the procedures of the House of Representatives, the subpoena was delivered by letter to the Speaker on June 5, 1974 and that matter was laid before the House on the same day. That procedure was reported in the Congressional Record on June 5, 1974 at page H4782.

Therefore, I must respectfully inform you that Mr. Hogan is not in a position to deliver the documents before the Court as commanded in the subpoena above referenced.

Sincerely,

/s/ LUCIEN N. NEDZI
Chairman, Special Subcommittee
on Intelligence

LNN:wha
Enclosure