The defendant was indicted and convicted for robbery in the first degree. Alabama Code 1975, Section 13A-8-41 (Amended 1977). Sentence was ten years' imprisonment.
 I
The defendant raises several issues surrounding the eyewitness identification.
On Saturday, July 4, 1981, the defendant entered the Jr. Food Store in Alexander City and asked to use the restroom. Mrs. *Page 1235 
Grace Rainwater observed the defendant at this time. When the defendant returned from the restroom he had one towel across his face and another over his hand partially concealing "what looked like a gun." The defendant ordered Mrs. Rainwater and her husband to the back of the store. Over $2,000.00 was taken in the robbery.
That afternoon, Mrs. Rainwater went through five mug books at the Alexander City police department. She was unable to identify anyone. No mug book contained a photograph of the defendant.
The next day, around 2:26 P.M., the defendant voluntarily came to the police department to find out why the police were looking for him. Officer Timothy Baker advised the defendant of his Miranda rights and questioned the defendant about the robbery. The defendant denied any participation in the crime. Officer Baker testified that the defendant said it was "all right" if he was photographed and "expressed a desire to have the person who was robbed to see him." Although the defendant denied that he specifically agreed to have his photograph taken, he acknowledged that he did request to see the person who said that he was the one that robbed the store.
After the defendant had been photographed, Mrs. Rainwater was asked to view photographs of six individuals. Officer Ralph Burton testified that although he was not physically present he heard that Officer Baker asked Mrs. Rainwater "to identify the person out of those pictures that came in the store and robbed them."
Officer Baker testified that he only told Mrs. Rainwater that he had some more photographs he would like for her to view without giving a reason. Baker stated that he laid the photographs out and said "is there anybody in there that looks familiar or anything?" Mrs. Rainwater selected the two photographs of the defendant and said "that looks like the person who robbed her."
At 3:25 that afternoon, Mrs. Rainwater looked at eight separate photographs of six individuals. Four of these photographs were typical mug shots. Each of these mug shots consisted of one black and white photograph which contained two views of one individual — a frontal and a side view with a height chart or markings in the background. Printed information on the bottom of these four photographs had been taped over. There were two separate photographs of a fifth individual and two separate photographs of the defendant. These four photographs were the only ones in color. These four photographs were not mug shots even though they were frontal and side views of the defendant and another. There was nothing contained in or on any of these four photographs which would indicate that they had been taken by the police or while the subjects were in police custody. Officer Baker testified that he also covered the bottom portion of each of these four pictures "to try and make them all look uniform."
From these eight photographs, Mrs. Rainwater identified the two photographs of the defendant.
Mrs. Rainwater was then allowed to view the defendant in a showup. The State's evidence indicates that this showup was held at the defendant's request. After Mrs. Rainwater identified the defendant as the robber, she asked if that was Jethro Jones and indicated that she knew the defendant by name and by sight.
The defendant argues that the pretrial identification procedure was suggestive and violated his right of due process because (1) Mrs. Rainwater viewed the defendant after having selected his photographs in a photographic lineup, (2) she was told that the robber's photograph was among the photographs and (3) the photographs of the defendant were in color.
While any showup is suggestive by its very nature, Brazell v.State, 369 So.2d 25 (Ala.Cr.App. 1978), cert. denied,369 So.2d 31 (Ala. 1979), the question is whether the one-on-one confrontation was "unnecessarily" or "impermissibly" suggestive. Brazell, 369 So.2d at 28. We do not find this to be the case here. A defendant may not request a showup and then seek to profit by attacking the validity of the pretrial identification *Page 1236 
under the circumstances presented here.
Yet, even if it be assumed that the showup was impermissibly suggestive, an examination of the five factors listed in Neilv. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), leads us to the conclusion that the identification was reliable and had a basis independent of any suggestive identification procedure.
Mrs. Rainwater testified that she had a clear opportunity to view the robber before he covered his head with a towel. Mrs. Rainwater's description matched that of an individual Officer Ralph Burton had observed near the robbery in both time and place, in an area where he "shouldn't have been", in an area at a time when it was "unusual" for anyone to have been there. Burton later identified the defendant as the person he saw. Mrs. Rainwater gave Officer Jack Patterson a detailed description of the robber.
It is important that Mrs. Rainwater identified the defendant's photograph before she saw him in the showup. Floydv. State, 387 So.2d 291 (Ala.Cr.App. 1980).
On direct examination, Mrs. Rainwater stated that she was "absolutely sure" that the defendant was the man who robbed her. On cross examination she testified that she told the police the defendant "looked like" the robber. Officer Baker testified that Mrs. Rainwater told him that the defendant was the person who robbed her and also told him that the defendant "looks like" the person who robbed the store. Our reading of the record convinces us that Mrs. Rainwater made a positive identification of the defendant the day after the robbery. However, "(t)he question of whether the victim's identification was positive or not goes to the weight and credibility of her testimony, and was a question for the jury." Williams v. State,348 So.2d 1101, 1104 (Ala.Cr.App.), cert. denied, Ex parteWilliams, 348 So.2d 1105 (Ala. 1977); Richardson v. State,374 So.2d 433, 435 (Ala.Cr.App. 1979).
Even if Officer Baker did tell Mrs. Rainwater that a suspect's picture was among the photographs she was viewing, that fact alone will not render a photographic lineup unnecessarily suggestive. "That a person is actually told that the suspect's photograph is among the other pictures, although generally inadvisable, does not contaminate the identification proceeding." Phillips v. State, 409 So.2d 918, 919 (Ala.Cr.App. 1981); McGee v. State, 383 So.2d 881 (Ala.Cr.App.), cert. denied, Ex parte McGee, 383 So.2d 884 (Ala. 1980); Jackson v.State, 361 So.2d 1152 (Ala.Cr.App. 1977).
Since there was another individual in the photographic lineup whose pictures were also in color, we do not deem the fact that the defendant's photographs were in color to have amounted to any unnecessary suggestiveness.
The record supports our conclusion that the pretrial identification procedure was not unnecessarily suggestive and conducive to irreparable mistaken identification. Stovall v.Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).
 II
The defendant argues that the eight mug shots which were introduced into evidence and the five mug books which were shown to the jury created substantial prejudice and denied him a fair trial. These allegations demand an examination of the record to determine what actually occurred during the trial.
The State's first witness at the defendant's trial was Mrs. Grace Rainwater. On direct examination and without reference to any pretrial identification procedure, she identified the defendant as the robber.
On cross examination of this witness, defense counsel, in an attempt at impeachment, elicited facts about the pretrial photographic lineup in which Mrs. Rainwater identified the defendant.
On redirect, the State then brought out the fact that on the afternoon of the crime Mrs. Rainwater had looked at "these five photo albums (mug books) right here." Defense counsel objected to the prosecutor *Page 1237 
"letting the jury view those mug shots." This was the first time that the term "mug shots" had been used before the jury. The trial judge instructed: "Don't let them look at them." Defense counsel again objected:
 "MR. ADAMS (Defense Counsel): And I'm going to object to him showing those mug shots to the jury and move for a mistrial.
 "THE COURT: I don't believe he's shown any mug shots. He just showed the five things that are in evidence in this case.[1] And we won't let them look at the mug shots. I don't know what prejudice that would have."
Following this, Mrs. Rainwater, still under redirect examination, testified that after the store had been robbed she had looked at all the photographs contained in all five albums but had not identified anyone. She testified that she later saw photographs of six other individuals and had selected the defendant's picture from that group. The photographs of these individuals were then admitted into evidence over the objection of defense counsel.
Initially, we note, as we have previously indicated, that the objected to photographs of the defendant are not mug shots although one picture is a full face or frontal view and the other is a profile view. The photographs are separate and are not side by side. They contain no height marks and bear no numbers or legends.
As we noted in Gross v. State, 395 So.2d 485, 487
(Ala.Cr.App. 1981), "(t)he fundamental reason why `mug shots' of a defendant are inadmissible in a criminal trial is, of course, because they tend to apprise the jury of the fact that the defendant has been in some sort of trouble with the police before, thereby reflecting unfavorably upon the character of the accused." There was no danger of this here because, even though there was no direct testimony that the defendant had never been charged or arrested, the time and reason why and how the defendant's photographs came to be taken and shown to the witness were explained to the jury by witnesses for the State and by the defendant himself.
In view of these explanations and in view of the fact that the photographs of the defendant were not mug shots, we find no prejudice to the defendant resulted when the jury was allowed to view the photographs, four of which were "doctored" mug shots, from which the victim identified the defendant.
A witness may corroborate his in-court identification of the accused by evidence of an earlier out-of-court identification to rebut an inference raised on cross examination that his identification was mistaken or contrived. Farley v. State,406 So.2d 1045, 1047 (Ala.Cr.App.), cert. denied, 406 So.2d 1050
(Ala. 1981); Gilham v. State, 382 So.2d 616 (Ala.Cr.App.), cert. denied, Ex parte Gilham, 382 So.2d 619 (1980); Carlislev. State, 371 So.2d 975 (Ala.Cr.App. 1979); Howell v. State,369 So.2d 297 (Ala.Cr.App. 1978).
 III
The defendant argues that his conviction should be reversed because of prejudicial and improper comments made by the Assistant District Attorney in his closing argument to the jury.
With respect to the prosecutorial limitations of closing argument, each case must be considered and reviewed on its own merits, "resulting from examination of the proceedings in their entirety, tempered but not governed in any rigid sense of stare decisis by what has been done in similar situations." Kotteakosv. United States, 328 U.S. 750, 66 S.Ct. 1239, 1246,99 L.Ed. 1557 (1946); Cook v. State, 369 So.2d 1243, 1250 (Ala.Cr.App. 1977), affirmed on this issue, 369 So.2d 1251 (Ala. 1978).
We have carefully reviewed the objected to comments and find that they do not warrant a reversal of the defendant's conviction. Flint v. State, 370 So.2d 332 *Page 1238 
(Ala.Cr.App. 1979); Farley v. State, 406 So.2d 1045
(Ala.Cr.App.), cert. denied, 406 So.2d 1050 (Ala. 1981); Watsonv. State, 398 So.2d 320 (Ala.Cr.App. 1980), cert. denied,398 So.2d 332 (Ala. 1981); Henry v. State, 355 So.2d 411
(Ala.Cr.App. 1978).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.
[1] Admitted at the hearing on the motion to suppress held immediately before the defendant's trial were five albums of mug shots which belonged to the Alexander City Police Department. These mug books were not introduced into evidence at the trial.