318 S.E.2d 603

**STATE of West Virginia**

v.

**David Glen WATSON.**

**No. 16057.**

Supreme Court of Appeals of West Virginia.

June 18, 1984.

Michael & Kupec, Thomas R. Michael, Atty., Clarksburg, for appellant.

J. Bradley Russell, Asst. Atty. Gen., Charleston, for appellee.

MILLER, Justice:

The defendant, David Glen Watson, was convicted of breaking and entering the home of Albert Merandi. He claims that the circuit court erred in failing to order a pretrial mental examination upon his written motion. He asserts that the court failed to follow the provisions of Rule 26.2 of the Rules of Criminal Procedure by denying him the right to obtain a witness's statement. Additionally, he argues that the trial court erred in submitting his photograph to the jury and that it was placed in an unduly suggestive photographic array. Further error rests on the contention that an eleven-year-old witness was too young to testify and that there were erroneous jury instructions. We conclude that the defendant was entitled to a mental examination and that the trial court failed to follow Rule 26.2. We, therefore, reverse the judgment of the Circuit Court of Harrison County.

On November 18, 1982, the home of Albert Merandi was broken into and a stereo receiver was stolen. Merandi's eleven-year-old daughter, Miranda Merandi, was home at the time. She heard a crash and saw someone at the bottom of a set of stairs. She telephoned her father who drove home from work. As he approached his home, Mr. Merandi saw a person whom he later identified as the defendant in an alley behind his house.

Based upon information received from the Merandis, the police officers who investigated the crime prepared a photographic display consisting of five photographs. Those photographs were shown to Miranda Merandi who identified the photograph of

the defendant as that of the person who was in her house. Her father also identified the defendant's photograph. This photographic array is challenged by the defendant on several grounds.

## I.

### MENTAL EXAMINATION

■ While awaiting trial, the defendant, on three occasions, allegedly attempted to commit suicide. Because of these attempts, defense counsel moved for a pretrial mental examination to determine the defendant's competency to stand trial. After conducting a short, untranscribed hearing, the trial court denied the motion.[1] The denial of the mental examination is the defendant's first ground of appeal.

In *State v. Echard,* 167 W.Va. 900, 280 S.E.2d 724 (1981), we addressed the question of whether an attempt at suicide sufficiently raises the question of mental competency to require a trial court to order the psychiatric examination of a defendant pursuant to the provisions of W.Va.Code, 27–6A–1. After considering Syllabus Point 4 of *State v. Demastus,* 165 W.Va. 572, 270 S.E.2d 649 (1980), we concluded in *Echard,* 167 W.Va. at 901–902, 280 S.E.2d at 725:

"Under our statute for the civil commitment of the mentally ill either incident of intentional, self-destructive, mutilation would have supported the appellant's involuntary commitment as being mentally ill. *See, W.Va.Code,* 27–5–3 [1979]. We believe that either incident should have indicated potential mental illness to the trial judge and should have prompted him to order a mental examination."

■ In Syllabus Point 4 of *Demastus,* we said:

"When a trial judge is made aware of a possible problem with defendant's competency, it is abuse of discretion to deny a motion for psychiatric examination. To the extent *State v. Arnold,* 159 W.Va. 158, 219 S.E.2d 922 (1975), differs from this rule, it is overruled."

In reaching this conclusion, we stated:

"A judge may be made aware of a possible problem with defendant's competency by such factors as: a lawyer's representation concerning the competence of his client; a history of mental illness or behavioral abnormalities; previous confinement for mental disturbance; documented proof of mental disturbance; evidence of irrational behavior; demeanor observed by the judge; and, psychiatric and lay testimony about competency. *State v. Arnold, supra* 219 S.E.2d, at 926, citing: *Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). These factors are restated in *State v. Milam,* 159 W.Va. 691, 226 S.E.2d 433 (1976)." 165 W.Va. at 581–582, 270 S.E.2d at 656, n. 9.

We believe, as we indicated in *Echard,* that genuine attempts at suicide constitute evidence of irrational behavior. When these acts are brought to the attention of a trial judge, he should order a psychiatric examination of a defendant. Under the circumstances of this case, the trial judge abused his discretion in failing to order a psychiatric examination of the defendant.

## II.

### RULE 26.2

The defendant assigns as error the fact that the trial court refused to allow him to

---

1. Defense counsel's motion, dated February 1, 1983, stated, in material part, that:

"1. He [the defendant] is not mentally competent to stand trial, or to participate substantially in his defense, or to understand the nature and consequences of a criminal trial.

"2. While confined in the Harrison County jail prior to his indictment on the above felonies, he three (3) times attempted to commit suicide.

"3. He is addicted to, and dependant [sic] upon, alcohol and drugs to the extent that he is not competent to stand trial."

The trial court by order of February 7, 1983, denied the motion stating: "[T]he Court was of the opinion to and did thereby find that the defendant, David Glen Watson is competent to stand trial, can assist his attorney in his defense and can understand the nature and consequences of a criminal trial." A court may initially conclude that a motion for mental examination under W.Va.Code, 27–6A–1(a), is not warranted based upon the fact that there is insufficient evidence to indicate that the defendant is incompetent. If this is done, the court should state its findings on the record. Rule 12(e), West Virginia Rules of Criminal Procedure. This was not done in the present case.

examine a witness's pretrial statement. This assignment raises several questions regarding Rule 26.2 of the Rules of Criminal Procedure relating to production of statements of witnesses.

During trial, at an *in camera* suppression hearing on the pretrial photographic identification, a police officer testified concerning the photographic array identification procedure. Additionally, he testified about Miranda Merandi's description of the person she saw in her house. At the conclusion of the testimony, defense counsel requested, under Rule 26.2, that he be provided with a copy of any statement made by the witness.

The prosecutor responded that the witness had made no written statement. Defense counsel stated the rule was not limited to written statements, but included statements made to the grand jury which are recorded or otherwise transcribed. The court responded that it was unreasonable to delay the trial while the court reporter located and transcribed the applicable grand jury minutes and consequently overruled defense counsel's request.[2] The State argues that Rule 26.2(a) refers to statements "in their possession" and that the grand jury minutes were not in the possession of the prosecuting attorney.[3] We disagree.

Our Rule 26.2 is patterned after Rule 26.2 of the Federal Rules of Criminal Procedure, which rule has only recently been incorporated into the federal rules of criminal procedure.[4] The advisory committee's note to Federal Rule 26.2 reflects that the rule developed from two sources. 8A J. Moore, Moore's Federal Practice ¶ 26.2.01[2] (1983). The first was the Jencks Act, 18 U.S.C. § 3500, which provided a rather detailed procedure requiring the government to produce written statements of witnesses who testified at trial. The defendant had to request production of the written statement once the witness completed his direct examination.[5]

The second source was the case of *United States v. Nobles*, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975), where the United States Supreme Court recognized under certain circumstances that the prosecutor could compel the production of written statements of defense witnesses. Thus, as the commentators recognized, *Nobles* provided the reciprocity that the Jencks Act lacked and gave the impetus for the adoption of Rule 26.2. 8A J. Moore, Moore's Federal Practice ¶ 26.2.02[2] (1983); 2 C. Wright, Federal Practice & Procedure § 436 (1982); Federal Procedure, Lawyer's Ed. § 22:682 *et seq.* (1982).

■ Because many of the provisions of the Jencks Act are incorporated into Rule 26.2, commentators, as well as courts, have used Jencks Act cases to interpret it. 2 C. Wright, Federal Practice & Procedure § 437 at 586. *See, e.g., United States v. Petito*, 671 F.2d 68 (2nd Cir.), *cert. denied*, 459 U.S. 824, 103 S.Ct. 56, 74 L.Ed.2d 60 (1982); *United States v. Abrams*, 539 F.Supp. 378, 391 (S.D.N.Y.1982). The term

2. The record is unclear on whether the officer had testified before the grand jury.

3. Rule 26.2(a) states:
 "*Motion for Production.*—After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, shall order the attorney for the State or the defendant and his attorney, as the case may be, to produce for the examination and use of the moving party any statement of the witness that is in their possession that relates to the subject matter concerning which the witness has testified."

4. Rule 26.2 had an effective date of December 1, 1980. The original federal rules of criminal procedure were adopted in 1946.

5. The relevant portion of the Jencks Act, 18 U.S.C. § 3500(b), is:
 "After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use."
 The Jencks Act was enacted in response to the decision of *Jencks v. United States*, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957).

"statement" is defined in Rule 26.2(f).[6] It is essentially the same as the term "statement" in subsection (e) of the Jencks Act[7] and includes "a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury."

■■■ Even though the grand jury proceedings which involve a witness's statement have not been typed, this does not exempt the statement from the requirements of the Jencks Act. *United States v. Merlino*, 595 F.2d 1016 (5th Cir.1979), *cert. denied*, 444 U.S. 1071, 62 L.Ed.2d 752, 100 S.Ct. 1014 (1980); *United States v. Knowles*, 594 F.2d 753 (9th Cir.1979). This same rule should apply to Rule 26.2 because of the parallel language. Wright, *supra* at 593. The Jencks Act uses the phrase "any statement in the possession of the United States." Rule 26.2 provides "any statement of the witness that is in their possession," meaning the possession of the attorney for the State or for the defendant. Federal courts hold that under the "in the possession of" language a prosecutor is required to disclose statements to which he has access even though he does not have the present physical possession of the statements. This is indicated by the following passage from *United States v. Trevino*, 556 F.2d 1265, 1272 (5th Cir.1977):

"We have held, for example, that *Brady* required disclosure of the Post Office Department personnel file of a government witness employed by that agency, to which the prosecution did not deny having access, even though it lacked present physical possession. *United States v. Deutsch*, 475 F.2d 55, 57 (5th Cir.1973). Other courts have held that investigative agencies' files were covered by the Jencks Act or by Rule 16. Certainly the prosecutor would not be allowed to avoid disclosure of evidence by the simple expedient of leaving relevant evidence to repose in the hands of another agency while utilizing his access to it in preparing his case for trial; such evidence is plainly within his Rule 16 'control.' " (Footnotes omitted)

*See also Campbell v. United States*, 365 U.S. 85, 81 S.Ct. 421, 5 L.Ed.2d 428 (1961); *United States v. Dansker*, 537 F.2d 40, 61 (3rd Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977); *United States v. Deutsch*, 475 F.2d 55, 57 (5th Cir.1973); *United States v. Ehrlichman*, 389 F.Supp. 95 (D.D.C.1974).

■■■ Moreover, under Rule 6 of our criminal rules, it is clear that exceptions are made under Rule 6(e)(3)(A)(i) and (ii)[8] to the general rule of confidentiality which surrounds grand jury proceedings by vir-

---

**6.** Rule 26.2(f) provides:
> "*Definition.*—As used in this rule, a 'statement' of a witness means:
> "(1) A written statement made by the witness that is signed or otherwise adopted or approved by him;
> "(2) A substantially verbatim recital of an oral statement made by the witness that is recorded contemporaneously with the making of the oral statement and that is contained in a stenographic, mechanical, electrical, or other recording or a transcription thereof;
> "(3) A statement, however taken or recorded or a transcription thereof, made by the witness to a grand jury."

**7.** Section 3500(e) of the Jencks Act, 18 U.S.C., provides:
> "The term 'statement', as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States, means—
> "(1) a written statement made by said witness and signed or otherwise adopted or approved by him;

"(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or

"(3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury."

**8.** Rule 6(e)(3)(A)(i) and (ii) provide:
> "Exceptions.—
> "(A) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury, other than its deliberations and the vote of any grand jury, may be made to:
> "(i) An attorney for the State for use in the performance of such attorney's duty; and
> "(ii) Such official personnel as are deemed necessary by an attorney for the State to assist an attorney for the State in the performance of such attorney's duty to enforce criminal law."

tue of Rule 6(e)(2). These exceptions are made to enable the State's attorney to procure grand jury testimony in the performance of his duties. Consequently, we hold that under Rule 26.2, the prosecuting attorney does have possession of grand jury transcripts by virtue of his access to them under Rule 6(e)(3)(A) of the West Virginia Rules of Criminal Procedure.

The trial court rejected the defendant's Rule 26.2 request because it came too late in the proceedings and because it was, in the court's view, unreasonable to delay the trial until the court reporter located and transcribed the witness's grand jury testimony. However, the rule technically does not permit the motion or request to be made until the witness has testified. In discussing this point, Wright states:

> "Rule 26.2, like the statute it has replaced, creates no right to production of statements of witnesses until the witness has testified on direct examination.... The courts had no choice except to enforce that limitation. It was and is highly inconvenient, since it requires an interruption between the direct examination and the cross-examination in which a motion for production is made and fought over, and the documents produced read by the lawyer who has requested production. In practice in the past the government frequently gave defense counsel access to the documents in advance of direct examination, and the courts have repeatedly commended this practice." 2 C. Wright, *supra*, § 438 at 598–99. (Footnotes omitted)

 As noted, this same procedure existed under the Jencks Act. Many courts, sensing the advantages of early disclosure in promoting an orderly trial, urged voluntary cooperation for early disclosure. *E.g., United States v. Sebastian,* 497 F.2d 1267, 1270 (2d Cir.1974); *United States v. Murphy,* 569 F.2d 771, 773 n. 5 (3rd Cir.), *cert. denied,* 435 U.S. 955, 98 S.Ct. 1588, 55 L.Ed.2d 807 (1978); *United*

*States v. Campagnuolo,* 592 F.2d 852, 858 n. 3 (5th Cir.1979); *United States v. Algie,* 667 F.2d 569 (6th Cir.1982). We echo the sentiment of these courts and urge the parties to make a voluntary disclosure of Rule 26.2 statements. However, under the literal reading of the rule, defense counsel could not technically have made the request until the witness had testified. Thus, we believe the circuit court was in error in refusing disclosure on the ground that the request was not made until after the witness had testified.

 Since this case is being reversed,[9] it is perhaps beneficial to note some additional procedural matters. The rule is not automatically triggered as the party must make a motion for production. Rule 26.2(a); 2 C. Wright, *supra*, § 438 at 601. With the motion made, the next step is that the court must ascertain if there exists a "statement" within the meaning of the rule. *See* 2 C. Wright, *supra*, § 437 at 586. There is also the related inquiry as to whether it is in the possession of the party and whether it relates to the subject matter concerning which the witness has testified. Rule 26.2(a). Since some of these inquiries involve disputed facts, the court's role has been defined as follows:

> "There may be dispute about whether a writing exists, or whether it is a 'statement' within the definition of the rule, or whether it relates to the subject matter concerning which the witness has testified. The court must resolve the dispute. It cannot simply accept the assurance of the attorney who has called the witness that he has disclosed to the other party everything that is within the scope of the rule.

> "If there is sufficient foundation for believing that there may be a statement that ought to be produced in whole or in part, the court is required to order that the statement be delivered to the court in camera. The court is also to decide for

---

**9.** Where the only error is the failure to disclose, courts under the Jencks Act have remanded the case for a determination of whether the statement comes within the act and whether the failure to disclose can be treated as harmless

error. *E.g., Government of Virgin Islands v. Lovell,* 378 F.2d 799, 805–06 (3rd Cir.1967); *United States v. Conroy,* 589 F.2d 1258, 1273 (5th Cir.1979); 2 C. Wright, *supra*, § 439 at 615–16.

itself what other evidence it needs to hear bearing on the issue." 2 C. Wright, *supra,* § 438 at 603–04. (Footnotes omitted)

We also observe that Rule 26.2(c) permits the court to excise portions of a statement if they do not relate to the subject matter concerning which the witness has testified. It provides for preservation of the excised portions for purposes of appeal.[10]

### III.

### PHOTOGRAPHS

#### A.

During the trial, the defendant's photograph identified by Miranda Merandi and her father, was introduced into evidence and given to the jury. On the reverse side of the cardboard frame holding the photograph, as well as on the photograph itself, the defendant's name appears together with certain personal information and the comment: "Other Remarks Grand Larceny, Tampering w/motor veh., carrying concealed weapons." The defendant claims that in presenting the photograph and frame to the jury, the court, in effect, informed the jury of the collateral crimes which were noted on the photograph and frame. He argues that the evidence of those crimes was wholly collateral and wholly irrelevant to the crime with which he was charged.

■ In examining the record before us, we do not find that defense counsel objected to the admission of the photograph or the accompanying frame on the basis of the notations contained on them.

The failure to object precludes our considering this point as reversible error. *State v. Beckett,* 172 W.Va. 817, 310 S.E.2d 883, 890 (1983); Syllabus Point 4, *State v. Files,* 125 W.Va. 243, 24 S.E.2d 233 (1942). However, since this case is to be remanded for a new trial, we observe that under our holdings in Syllabus Points 11 and 12 of *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974), and related cases, evidence of collateral crimes is generally inadmissible.[11]

#### B.

The defendant claims that the pretrial photographic array consisting of five photographs was impermissibly suggestive. He challenges the array on two grounds. The main contention is that the array was impermissibly suggestive in that only his photograph was a black and white print while all the others were color prints. His second claim is that three of the photographs showed men with facial hair while in his photograph the defendant was clean shaven.

■ In Syllabus Points 4 and 6 of *State v. Harless,* W.Va., 285 S.E.2d 461 (1981), we set the general rule regarding the admissibility of identification evidence in photographic arrays:

"4. A pretrial identification by photograph will be set aside if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

"6. Most courts have concluded that a photographic array will not be deemed

---

**10.** Rule 26.2(c) provides:
*"Production of Excised Statement.*—If the other party claims that the statement contains matter that does not relate to the subject matter concerning which the witness has testified, the court shall order that it be delivered to the court in camera. Upon inspection, the court shall excise the portions of the statement that do not relate to the subject matter concerning which the witness has testified, and shall order that the statement, with such material excised, be delivered to the moving party. Any portion of the statement that is withheld from the defendant over his objection shall be preserved by the attorney for the State, and, in the event of a con-

viction and an appeal by the defendant, shall be made available to the appellate court for the purpose of determining the correctness of the decision to excise the portion of the statement."

**11.** Other courts have held that a photograph of the defendant containing references to other crimes cannot be admitted to the jury. *E.g., United States v. Harman,* 349 F.2d 316 (4th Cir.1965); *United States v. Scott,* 494 F.2d 298 (7th Cir.1974); *People v. Hawkins,* 4 Ill.App.3d 471, 281 N.E.2d 72 (1972); *Commonwealth v. Burdell,* 380 Pa. 43, 110 A.2d 193 (1955); *cf., Annot.,* 30 A.L.R.3d 908 (1970).

excessively suggestive as long as it contains some photographs that are fairly representative of the defendant's physical features. The fact that some of the photographs are dissimilar to the defendant's appearance will not taint the entire array."

■ We have examined the photographs, and, insofar as they relate to the physical characteristics question, we do not find them to be impermissibly suggestive. Two individuals have small mustaches and no beards; another is clean shaven as was the defendant. All of the individuals appear to be rather similar in age, height, and weight to the defendant. In the rather analogous case of *People v. District Court for Second Judicial Dist.*, 199 Colo. 288, 607 P.2d 989 (1980), there were six photographs and four depicted men who had facial hair. Two photographs, including that of the defendant, depicted individuals with no facial hair. The court, after commenting on the fact that the facial hair in the four photographs was not extensive and did not obscure the facial features, concluded that the array was not impermissibly suggestive.

## C.

The mismatch between the defendant's black and white photograph and the color photographs is more troublesome. In *Passman v. Blackburn*, 652 F.2d 559 (5th Cir.1981), *cert. denied*, 455 U.S. 1022, 102 S.Ct. 1722, 72 L.Ed.2d 141 (1982), which involved a reverse fact pattern, the defendant's photograph being in color and the others being in black and white, the court stated that the defendant's photograph "stood out like the proverbial 'sore thumb.'" 652 F.2d at 570. The court concluded that the array was impermissibly suggestive. However, in addition to divergence in color of the photographs, the court considered other discrepancies in the array. The court noted that the other photographs presented front and side views, while the defendant's photograph presented only a front view. In addition, four of the eight photographs were much smaller in size. In the case before us, we have photographs of the same size, all of which present both side and front views.

The result in *Passman* may be explained by the fact that the photographs contained a number of dissimilar features in addition to color. Several courts have found the presence of other objectionable factors, when coupled with a difference in color between the defendant's photographs and others in the photographic array, to result in an unduly suggestive array. *E.g., Styers v. Smith*, 659 F.2d 293 (2nd Cir. 1981); *State v. Brouillette*, 286 N.W.2d 702, 709 (Minn.1979); *People v. Shea*, 387 N.Y.S.2d 477, 54 A.D.2d 722 (1976); *Turner v. State*, 614 S.W.2d 144 (Tex.Crim.App. 1981).

However, where color dissimilarity has been the only discrepancy, courts have been reluctant to find error. Where four color photographs, two of the defendant and the other two of another individual, were put into an array with four black and white photographs, the court in *Jones v. State*, 415 So.2d 1233 (Ala.Cr.App.1982), found that the array was not unduly suggestive. This was because the defendant's photographs were not the only colored photographs in the array. In two other cases in which the defendants' photographs had a noticeable green or yellow tint, with the other photographs being untinted and in black and white, the tint alone did not render the arrays impermissibly suggestive. *People v. Goodman*, 109 Ill.App.3d 203, 64 Ill.Dec. 793, 440 N.E.2d 345 (1982); *State v. Conyers*, 33 N.C.App. 654, 236 S.E.2d 393, *appeal dismissed*, 293 N.C. 362, 238 S.E.2d 150 (1977).

Finally, in *People v. Hudson*, 7 Ill.App.3d 333, 287 N.E.2d 297 (1972), the court held that the defendant's color photograph in an array otherwise composed of black and white photographs of similar size did not render the photographic array unduly suggestive. The court, while finding no reversible error, commented that "we do not look with favor upon the identification procedure employed in this case." 7 Ill.App.3d at 336, 287 N.E.2d at 300.

■ Our reaction to the array before us is similar to that of the *Hudson* court:

unfavorable but not reversible error. We conclude that a photographic array will not be deemed unduly suggestive merely because the defendant's photograph is of a different color than the others in the array. However, such an array will be closely scrutinized for other objectionable discrepancies, and such discrepancies, if found, will render the array unduly suggestive.

 For the foregoing reasons, we find the array not to be unduly suggestive. It is, therefore, unnecessary to consider the saving principle which enables a witness to still make a valid in-court identification of the defendant even though there have been impermissibly suggestive pretrial identification procedures. We spoke to this point in Syllabus Point 5 of *Harless*:

"Even though there is an impermissibly suggestive pretrial photographic array, an in-court identification could be made if the identifying witness has a reliable basis for making an identification of the defendant which basis is independent of the tainted pretrial identification procedures."

This principle utilizes the totality of the circumstances to determine if the witness had an independent basis for his identification other than an impermissible out-of-court identification. Syllabus Point 2, *State v. Gravely,* 171 W.Va. 428, 299 S.E.2d 375 (1982);[12] Syllabus Point 4, *State v. Carter,* 168 W.Va. 90, 282 S.E.2d 277 (1981); Syllabus Point 1, *State v. Williams,* 162 W.Va. 348, 249 S.E.2d 752 (1978).[13]

### IV.

### COMPETENCY OF WITNESS

 The defendant also claims that the trial court erred in allowing eleven-year-old Miranda Merandi to testify, asserting that she was too young to be competent to testify. In *State v. Daggett,* 167 W.Va. 411, 280 S.E.2d 545 (1981), where we discussed the competency of a six-year-old, we reviewed our earlier cases and summarized the law in Syllabus Point 6:

"The question of the competency of a child as a witness in any case is always addressed to the sound discretion of the trial judge, and if it appears that a careful and full examination as to the age, intelligence, capacity and moral accountability has been made by the judge and counsel and the trial judge has concluded that he is competent, the appellate court will not reverse the ruling which permits the evidence to be introduced unless it is apparent that it was flagrantly wrong."

*See also State v. Carter,* 168 W.Va. 90, 282 S.E.2d 277 (1981); *State v. Butcher,* W.Va., 270 S.E.2d 156 (1980).

 In the present case, the judge held an *in camera* hearing and it appears that Miranda Merandi answered the questions intelligently and demonstrated an understanding of what it meant not to tell the truth. We do not find any abuse of discretion in permitting this witness to testify.

### V.

### INSTRUCTIONS

### A.

 Another of the defendant's contentions is that the trial court erred in refusing to give the defendant's instruction No. 11 dealing with identification. The defendant claims that he was entitled to this instruction under our holding in *State v. Payne,* 167 W.Va. 252, 280 S.E.2d 72

---

12. Syllabus Point 2 of *Gravely* states:

 " 'In determining whether an out-of-court identification of a defendant is so tainted as to require suppression of an in-court identification a court must look to the totality of the circumstances and determine whether the identification was reliable, even though the confrontation procedure was suggestive, with due regard given to such factors as the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.' Syl. pt. 3, *State v. Casdorph,* 159 W.Va. 909, 230 S.E.2d 476 (1976)."

13. The trial court in addition to finding the photographic array *not to be impermissibly suggestive* also found there was a sufficient independent basis for the in-court identification other than the pretrial identification procedure.

(1981). He argues that his presence in the house rested on the uncorroborated and contradicted testimony of Miranda Merandi. The defendant's testimony was that he was not in the house, but had been in the neighborhood visiting a girlfriend. He, therefore, contends that under *Payne* his identification as the perpetrator of the crime was a controverted factual issue.

The State argues that the instruction is defective and that because Miss Merandi's testimony was corroborated by her father, who saw the defendant in the alley behind the house, *Payne* is not applicable. We believe the instruction as offered was improper, but find that the defendant, under the evidence, would be entitled to a proper identification instruction.

*Payne* dealt with the question of when a defendant would be entitled to an instruction relating to the defendant's identification. We concluded in Syllabus Point 5 of *Payne* that where the State's case "is based upon the uncorroborated and uncontradicted identification testimony," then it was error not to give the defendant's identification instruction.[14] We also referred to two earlier cases which dealt with somewhat the same issue, *State v. Perry,* 41 W.Va. 641, 24 S.E. 634 (1896), and *State v. Garten,* 131 W.Va. 641, 49 S.E.2d 561 (1948), noting that in *Perry* the testimony was uncorroborated and contradicted and an instruction was deemed mandated.

Under the facts of this case, the only testimony placing the defendant in the house was that of eleven-year-old Miranda Merandi. The defendant specifically denied being present in the house. Although her father saw him in the alley behind the house, the father's testimony was not inconsistent with the defendant's story that he was there because he had been visiting his girlfriend who lived in the neighborhood.

We believe the identification of the defendant in the house was contradicted and cannot be said to be corroborated to the extent that would justify a refusal of a defense identification instruction. There are present other factors that cast some cloud over the identification issue. The identifying witness was relatively young and did not observe the intruder for any appreciable length of time. Furthermore, there was, as previously noted, some suggestiveness involved with the photographic array. When all of these circumstances are combined, we believe that the defendant was entitled to a proper instruction on the identification issue. *See generally* Annot., 23 A.L.R.4th 1089 (1983).

As earlier noted, we do not believe the defendant's offered instruction was proper.[15] The first sentence is premised on the theory that any eyewitness testimony is suspect, a legal point that we believe is too broad. Furthermore, the instruction suggests that even though the eyewitness testimony is corroborated, it may still be suspect. Finally, it does not attempt to give the jury any detailed guidelines for evaluating such testimony as we suggested in *Payne.* In note 1 of *Payne,* we set out an identification instruction from *United*

---

**14.** Syllabus Point 5 of *Payne* in its entirety states:

"Where the State's case is based upon the uncorroborated and uncontradicted identification testimony of a prosecuting witness, it is error not to instruct the jury upon request that, if they believe from the evidence in the case that the crime charged against the defendant rests alone on the testimony of the prosecuting witness, then the jury should scrutinize such testimony with care and caution."

**15.** Defendant's Instruction No. 11 stated:

"The Court instructs the jury that where the prosecution has offered identification testimony, that is, the testimony of an eye witness that she saw the Defendant commit the act charged, such testimony shall be received with caution. An identification by a stranger is not as trustworthy as an identification by an acquaintance. Mistaken identification is not uncommon. The witness' opportunity to observe the perpetrator during the commission of the act charged is of great importance in determining the credibility of her identification. Testimony of the witness that she is positive of her identification may be considered by you, but does not relieve you of the duty to carefully consider her identification testimony and to reject it if you find that it is not reliable. Careful scrutiny of such testimony is especially important when, as in this case, it is the only testimony offered by the prosecution to connect the Defendant with the act charged."

*States v. Telfaire,* 469 F.2d 552 (D.C.Cir. 1972). Admittedly, the *Telfaire* instruction is somewhat prolix, and we believe it can be simplified.[16]

### B.

 The final assignment of error relates to the State's Instruction No. 5 which the defendant objected to on the ground that it permitted the jury to infer an intent to commit larceny if it believed beyond a reasonable doubt that a larceny was committed.[17] The contested portion of the instruction was taken from *State v. Whiting,* 164 W.Va. 352, 263 S.E.2d 896, 897 (1980), where we approved of this language. Other courts have held that an instruction which permits a jury to infer, but states they need not so infer, a certain conclusion from an established set of facts does not create an impermissible burden-shifting presumption. *United States v. Beardslee,* 609 F.2d 914, 919 (8th Cir.1979), *cert. denied,* 444 U.S. 1090, 100 S.Ct. 1053, 62 L.Ed.2d 778 (1980); *United States v. White,* 649 F.2d 779, 782 (10th Cir.), *cert. denied,* 454 U.S. 877, 102 S.Ct. 357, 70 L.Ed.2d 186 (1981); *Commonwealth v. Hughes,* 380 Mass. 596, 404 N.E.2d 1246,

1250 (1980); *State v. Olson,* 39 Or.App. 383, 592 P.2d 273, 274–75 (1979).

For the foregoing reasons, we reverse the judgment of the circuit court and remand the case for a new trial.

Reversed and Remanded.

---

16. This proposed instruction is patterned from one approved in *State v. Warren,* 230 Kan. 385, 635 P.2d 1236 (1981):

> One of the disputed issues in this case is the identification of the defendant as the person who committed the crime charged. The prosecution has the burden of proving beyond a reasonable doubt this issue. In considering whether the prosecution has proved beyond a reasonable doubt that the defendant was the person who committed the offense, you may consider the following with regard to an identification witness's testimony:
>
> (1) the witness's opportunity to observe the person(s) committing the crime, which includes the amount of time for observation, the physical condition such as lighting, distance away, or obstructions at the time of the observation;
>
> (2) the witness's degree of attention at the time of the observation, whether the witness was under stress, and whether the witness had occasion to see or know the person in the past;
>
> (3) whether the witness gave a description of the person after the crime and, if so, its accuracy and the length of time after the crime that the description was given; and

> (4) whether the witness made any subsequent identification of the person after the crime, the circumstances surrounding such subsequent identification, the witness's level of certainty at such subsequent identification and the time between the crime and the subsequent identification.

17. State's Instruction No. 5 stated [the contested portion is emphasized]:

> "The Court instructs the jury that if you believe from the evidence in this case beyond a reasonable doubt that the defendant, David Glen Watson, broke and entered the dwelling house belonging to and the property of Albert Frank Merandi as charged in the indictment in this case, with intent to commit any larceny therein, you may find the said David Glen Watson guilty as charged in the indictment in this case; *in this connection you are further instructed that if you believe from the evidence in this case beyond a reasonable doubt that the defendant, David Glen Watson, entered said dwelling and then and there committed larceny therein of goods and chattels of any value whatsoever, then you may infer, but need not infer, that the defendant, David Glen Watson, intended to commit a larceny.*"