The appellant, Virgil Bowers, was convicted of attempted murder and was sentenced to 20 years in prison. The appellant raises two issues on appeal.
 I
The appellant initially argues that the trial court erred when it denied the appellant's motion for a mistrial. During the cross-examination of Detective Curtis Mitchell of the Birmingham Police Department, defense counsel questioned whether the defendant had fought extradition from Wisconsin. The record shows the following: *Page 794 
 "Q [defense counsel]: And to your knowledge Mr. Bowers didn't fight extradition, did he?
"A: Not to my knowledge, no, ma'am.
"Q: He volunteered to come back, didn't he?
 "A: Well, there was some discrepancy about it. I understand he was facing charges in Milwaukee."
 "[defense counsel]: Your Honor, may we approach the bench?
 "The Court: You don't need to. Of course, that's not relevant to the issues here, folks, whether or not the man was facing charges in Milwaukee, that has nothing to do with whether or not this man is guilty of the offenses he is charged with here. So, I will ask you to please set that aside, put it out of your mind. Can you do that for me? If you don't think you can, let me know, because we have 13 jurors.
 "[defense counsel]: Your Honor, in all fairness, for the record I am going to make a motion for a mistrial. Detective Mitchell knows he is not supposed to burst out with something like that. It was totally unresponsive to the question that was asked. And with due deference in regard to the jury, they heard the answer and I don't think it is something they can erase from their minds. And I think a mistrial would be in order.
 "The Court: I appreciate your view on it, please, ma'am, but I am going to take the jurors' word that [they] will set it out of [their] mind; [it] has nothing to do with the issues in the case. Can you do that for me? Motion denied."
A mistrial is an extreme measure which should be granted only when the prejudice caused by the comment cannot be eradicated by instructions or other curative actions of the trial court.Hurst v. State, 469 So.2d 720 (Ala.Cr.App. 1985). Here, before defense counsel could voice any objection, the trial court, of its own volition, instructed the jurors to disregard the witness's statement and questioned the jurors to ensure that they could disregard the statement. The trial court gave sufficient prompt curative instructions, which cured any possible error. The trial court did not err in denying the appellant's motion for a mistrial.
 II
The appellant further argues that Detective Mitchell was impermissibly allowed to testify as to the victim's identification of the appellant from a photographic array. The appellant's counsel made both a motion in limine before Mitchell's testimony and an objection during Mitchell's testimony. The motion was denied and the objection was overruled. Mitchell was then allowed to testify that the victim had positively identified the appellant as the man who shot him.
 "A third party, such as a policeman, may testify that he observed the witness identify the accused out of court only if certain steps are followed before such evidence is presented.
 "Initially, . . . there must be a serious attempt to impeach the witness's testimony as to identification. Lee v. State, 565 So.2d 1153 (Ala. 1989); Thomas v. State, 461 So.2d 16, 18 (Ala. 1984) (the impeachment attempt must be one 'tending to affect the credibility of the witness'). Second, the witness must first make an in-court identification of the accused or must testify that he or she identified the accused out of court. See Thomas v. State, 461 So.2d 15 (Ala.Cr.App. 1984), affirmed, 461 So.2d 16 (Ala. 1984).
". . . .
 " 'In criminal trials the state's witness often will identify the accused as the person who committed the crime and the defense, on cross-examination, will attempt to imply that the witness is mistaken or has manufactured his identification. The defense even may be able to prove that the witness had previously said that he did not know, did not recognize and could not identify the person who committed the crime. When the state's witness has been impeached in this manner, it has been held that the state may prove that on some other occasion the witness did in fact identify the accused as the criminal.
This is particularly applicable to permit the witness *Page 795 
to testify that he formerly identified the accused in a police line-up or at the jail. It likewise has been held that this right of rehabilitation, which belongs to the prosecution, extends to the introduction of testimony from a third person that he saw the state's witness identify the accused on a former occasion.'
 "C. Gamble, McElroy's Alabama Evidence, § 177.01(6)(a) (3d ed. 1977)."
Pettway v. State, 571 So.2d 394, 395-96 (Ala.Cr.App. 1990). (Emphasis in Pettway.)
In the present case, the record clearly shows that the victim testified before Detective Mitchell testified and made an in-court identification of the appellant. The appellant, however, argues that no serious attempt was made to impeach the victim's identification. Our review of the record indicates otherwise. On cross-examination of the victim, the appellant's counsel asked numerous questions attacking the victim's in-court identification. The appellant's counsel questioned the victim regarding the victim's first gunshot wound to the face, the fact that the victim was upset and in a hurry when he saw the appellant, and the fact that the victim could not tell very much about the weapon. Counsel's questions seriously impeached the victim's testimony as to the identification of his attacker. Therefore, the testimony of Detective Mitchell that the victim had previously identified the appellant in the photographic array was correctly received into evidence to rehabilitate the victim's testimony.
For the foregoing reasons, the judgment in this cause is due to be affirmed.
AFFIRMED.
All the Judges concur.