BURKE, Judge.
James Crews was convicted of the unlawful distribution of a controlled substance, a violation of § 13A-12-211, Ala. Code 1975, and sentenced to 28 years in the state penitentiary. He was ordered to pay an Alabama Crime Victims’ assessment of $100, a Drug Demand assessment of $2,000, a Drug Demand Forensics assessment of $100, and attorney’s fees.
Nathan Lipscomb agreed to work with the police after a traffic stop during which a crack pipe was found. Lipscomb identified “James” with the possible last name “Crews” as the man at a given address who had sold him drugs daily for a period of months. (R. 231, 273, 275.) Cole Lumpkin, an agent of the Etowah County Drug Enforcement Agency, testified that, on August 14,2012, he searched Lipscomb, who was the confidential informant in this case, before dropping him off close to Crews’s residence[1] with $40[2] of “ ‘photocopied buy money.’ ” (R. 224.) Lipscomb was wired with a digital camera that produced both audio and video recordings. Lipscomb walked to Crews’s house and returned to where Lumpkin had dropped him off approximately 10 to 15 minutes later. Although the police officers’ vision was obscured by a bush as Lipscomb entered the house, they saw him walk up to the yard of the house and later leave the yard of the house. Lipscomb testified at trial and identified Crews as the seller in the recording, in photographs made from the recording, as well as in other photographs; he further identified Crews at trial as the man who ‘Sold him crack cocaine.
Upon Lipscomb’s return, officers took from Lipscomb the drugs that had been purchased and removed the camera. The drugs were transported to the office for the Etowah County Drug Enforcement Agency and logged into evidence. It was *762 later determined that the drugs were crack cocaine. The recording was downloaded and viewed by officers. A driver’s license printout of James Crews’s license was shown to Lipscomb, and he identified Crews as the man who had sold him crack cocaine. A photocopy of Crews’s 2011 driver’s license was admitted into evidence at trial.
Lumpkin and another officer went back to the house where the drug buy took place and were told by a man in the garage that “James” was in the house. The officers knocked, called out Crews by his first name, and were told to come in. Lumpkin identified Crews at trial as the man they spoke to in the house.[3] The officers told Crews that they had a recording of him selling cocaine and offered him a chance to cooperate by identifying his drug source.
The State presented testimony from Scott Cardwell, who worked for the Alabama Board of Pardons and Paroles and was Crews’s parole officer, in order to prove an aggravating factor for the purpose of justifying an upward departure from the sentence recommended in the presumptive sentencing guidelines.[4] Cardwell testified that Crews was serving a 25-year sentence and was to be supervised on parole until 2029. His parole was revoked following a hearing on January 25, 2013, because, among other charges, he had committed the new offense of distribution of a controlled substance. The drug sale on August 14, 2012, the subject of this appeal, had taken place while Crews was on supervised parole. The jury returned a finding that the aggravating circumstance that Crews was on probation or parole at the time of the offense was proven beyond a reasonable doubt. As noted earlier, the Etowah Circuit Court convicted Crews of unlawful distribution of a controlled substance and sentenced him to 28 years’ imprisonment. Crews appeals.
I.
Crews argues that the circuit court erred in failing to grant a mistrial after the State introduced collateral-crimes evidence during its questioning of Lumpkin; specifically, he takes issue with Lumpkin’s testimony that he had known Crews since Crews came back from prison.
Before trial, a hearing was held concerning Crews’s motion in limine regarding the admission of evidence of his having been in prison. Thereafter, at trial, the following transpired on direct examination from the State:
“A. [Lumpkin]. Well, me and the agent that I work with, we kind of was talking about him. And we figured due to Mr. Crews’ age and, the best of my memory, he’s not been out of prison long.
“[Defense Counsel]: Objection, Your Honor.
“THE COURT: Sustained.
“[Defense Counsel]: I object to that statement.
“[Prosecutor]: Come here, [defense counsel].
“(The following bench conference was held out of the hearing of the jury:)
*763 “[Prosecutor]: Do you want to do an instruction? Cautionary instruction? Do you think that would make it much worse? Precautionary instruction?
“THE COURT: Let’s just say the jury is to disregard any statement regarding anything about Mr. Crews’ past.
“[Defense Counsel]: That’s fine. That’s fine.
“(End of bench conference.)
“THE COURT: All right. The jury is to disregard any statement concerning references to Mr. Crews’ past.
“[Prosecutor]: All right.
“[Defense Counsel]: Judge, just a minute. May we approach?
“THE COURT: Yes.
“(The following bench conference was held out of the hearing of the jury:)
“[Defense Counsel]: Judge, based on that statement, I move for a mistrial, based on the statement—I move for a mistrial based on the statement he’d been in prison.
“THE COURT: Based on what?
“[Defense Counsel]: Based on his information he’d been in prison. That was the whole point of us blacking out the background on those pictures.
“[Prosecutor]: Judge gave them a precautionary—
“THE COURT: All right. Well, we can argue a little bit more during a break, but I’m going to deny your motion at this time.
“[Defense Counsel]: Okay.
“(End of bench conference.)”
(R. 239-41.)
Subsequently, defense counsel renewed his motion for a mistrial based on Lump-kin’s testimony, as follows:
“[Defense Counsel]: Judge, again, based on Cole Lumpkin’s statement of being in prison, we move for a mistrial. You can’t unring the bell. He made that statement in front of the jury. It’s highly prejudicial. We worked really hard this morning talking about blacking the background of these pictures out because of what—it indicated they were mugshots. And [the prosecutor] said he could do it. Obviously, they didn’t do it. The State—
“[Prosecutor]: Well, that’s why I didn’t offer it.
“[Defense Counsel]: Well, I know. But I’m just saying. But, I mean, I just think that’s highly prejudicial. He came out with that statement ‘he’s in prison’ and now it’s in the jury’s mind. They know that he’s in prison. And I think that’s grounds for mistrial.
“THE COURT: State?
“[Prosecutor]: Judge, we didn’t elicit the testimony.
“[Defense Counsel]: It’s their witness.
“[Prosecutor]: Well, let me finish.
“[Defense Counsel]: Okay.
“[Prosecutor]: As far as the motion for mistrial, I think it’s something that can be cured by a curative instruction. If the jury in the case cannot follow the Court’s instructions, then we have a problem. But otherwise, I think a curative instruction should settle it if they’re told to disregard it, not to give it any weight. I think it’s something we should attempt to do. I think the Court has already done that.
“[Defense Counsel]: Judge, this isn’t a minor infraction. I mean, this is a Constitutional Right. They don’t get to bring up his prior bad acts unless he testifies. And now they went and said he is in prison prior to this arrest. So I just don’t think that’s something that you can take back or curatively instruct the jury on.
*764 “THE COURT: Well, you know, I did sustain the objection and I did instruct the jury to disregard any remarks on that line. I’m not going to grant a mistrial. I’m going to trust the jury to disregard and not consider that evidence. And given the great weight of the testimony otherwise, if this is the only reference, it may not be a matter that the jury will regard with any significance, and if they follow my instructions, will disregard entirely.
“So I think given the evidence in total that this is the only incident we’re dealing with, I think that a mistrial would not be in order at this point in time. I’ll deny the motion.
“Is there an additional curative instruction that the parties wish for me to give, other than what I’ve already done?
“[Prosecutor]: I think you’ve covered it as far as I know.
“[Defense Counsel]: I just don’t think you can unring the bell 'once it’s rung.”
(R. 265-68.) Crews again renewed' his motion for a mistrial during a discussion as to whether the defense would be permitted to question the confidential informant as to his prison time.
The trial court has the discretion to grant or deny a motion for a mistrial, and such a ruling will be disturbed only upon a showing of manifest abuse. Evans v. State, 794 So.2d 415 (Ala.Crim.App. 2000). “‘The trial judge is in the best position to determine whether the prejudicial effects of an improper remark can be eradicated by instructions to the jury, and his determination should be accorded great deference.’ ” Simmons v. State, 797 So.2d 1134, 1164 (Ala.Crim.App.1999)(quoting Hannah v. State, 518 So.2d 182, 185 (Ala. Crim.App.1987)). “[A] mistrial is a drastic remedy, to be used only sparingly and only to prevent manifest injustice.” Ex parte Thomas, 625 So.2d 1156, 1157 (Ala.1993). “A mistrial is an extreme measure that should be taken only when the prejudice cannot be eradicated by instructions or other curative actions of the trial court.” Ex parte Lawrence, 776 So.2d 50, 55 (Ala. 2000). A mistrial is properly denied if an error can be cured by an instruction. Id. Here, we cannot say that the circuit court abused its discretion when it denied Crews’s motion for a mistrial. The trial judge gave immediate instructions to the jury to disregard the matter and thereby cured any prejudice Crews may have suffered from Lumpkin’s answer to a question. Jurors are presumed to follow the trial court’s oral instructions. Taylor v. State, 666 So.2d 36, 70 (Ala.Crim.App. 1994).
In this case, Lumpkin’s reference to Crews having gotten out of prison was not the main point of his testimony; rather, it was incidental. Further, the prosecutor was not attempting to elicit testimony concerning any prior conviction or imprisonment. See Smith v. State, 795 So.2d 788, 822-23 (Ala.Crim.App.2000)(quoting Stanton v. State, 648 So.2d 638, 643 (Ala.Crim. App.1994))(“ ‘We find that [Lumpkin’s] references to the appellant’s having been in prison, which were clearly unresponsive to the questions posed are comparable to remarks that we have held can be eradicated by curative instructions. See, e.g., Bowers v. State, 629 So.2d 793, 794 (Ala.Cr.App. 1993) (where “trial court, of its own volition, instructed the jurors to disregard [police detective’s unresponsive answer that he ‘understood the defendant was facing charged in Milwaukee’] and questioned jurors to ensure that they could disregard the statement,” the trial court’s actions “cured any possible error”)); Garnett v. State, 555 So.2d [1153] at 1155 [ (Ala.Crim.App.1989) ] (“any prejudice arising from [prosecutor’s] question [indicating that murder defendant had been *765 arrested for beating his wife] ... was both capable of eradication and was eradicated by the trail court’s prompt action” in instructing the jurors to disregard the question and in polling the jurors to ascertain that they could disregard the question); Floyd v. State, 412 So.2d 826, 830 (Ala.Cr, App.1981) (“the trial, court’s action in immediately instructing the jury to disregard the prosecution’s vague reference to another unspecified crime cured any potential error prejudicing the appellant’s case”),’ ”) See also Reams v. United States, 895 A.2d 914, 924 n. 5 (D.C.2006)(testimony that witness and defendant “sold drugs together” was not so prejudicial as to require a mistrial where trial judge immediately struck .the testimony and told jury to disregard it); Hardy v. United States, 343 F.2d 233, 234 (1964)(statement by witness that he and defendant “did time in the penitentiary together” held insufficient to require a mistrial).
Moreover, the reference was not repeated or highlighted in later testimony but, rather, was a passing comment. The comment by Lumpkin regarding Crews’s prior prison time did not have the effect of suggesting that Crews had committed the charged offense. Under these facts, the circuit court did not err in denying Crews’s motion for a mistrial.
U.
Crews also argues that the circuit court improperly sentenced him as a habitual offender because, he says, there was no proof, through certified copies, stipulation, or admission by Crews, of any prior felony convictions. Because the State failed to prove prior felony convictions, Crews argues, the circuit court erred by departing from the presumptive- sentencing guidelines and sentencing him as a habitual offender.
During sentencing, when he was asked by the judge if he had anything to say, Crews argued that a number of his prior offenses were listed twice and stated “I ain’t never had no‘ felonies ‘til I got to Alabama.” (R.520.)[5]
At a subsequent hearing on Crews’s motion for a new trial, defense counsel argued that Crews was improperly sentenced as a habitual offender because certified copies of his prior convictions were not introduced. The prosecutor responded:
“As far as the sentencing is concerned, during the trial of the case, the Court is well aware the State was required to establish or to prove the ag-gravators and make that part of the— and the jury had to pass on that as a matter of evidence. And I think there was a—basically a sentencing hearing in which, you know, Scott Cardwell did testify as to the prior convictions. And the jury made a finding on that, as a matter of law, that they did exist.
*766 “Mr. Crews was not sentenced as a habitual offender until the sentencing hearing in this case, winch was- some months later.
“What Scott testified to—and I wasn’t at the actual sentencing hearing, but Scott testified and, you know, as a matter of evidence, to the jury that these convictions existed in order for the jury to find aggravating circumstance when he was sentenced some months later, and that would have been—I think that would, have been the hearing in which an issue about certified convictions may have been argued or something of that nature.
“But anyway, at any rate, that would be a sentencing issue, not a trial issue not a new trial issue. And I’m assuming that it was probably done at sentencing.
■ “And the jury did, in fact, find beyond a reasonable doubt that these prior convictions did exist and they—and that was a sentencing a trial sentencing phase determination by the jury, just as in a capital case you can do it.”
(R. 544-45.)
The circuit court thereafter found that the prior felonies were sufficiently proven, stating:
“[I]n this situation, we have kind of a— this is kind of a first-impression .in regards to the circumstances of this trial in that we have, as [the.prosecutor] discussed, sworn testimony regarding the background of the defendant as a result of the proving of the aggravator, which is a situation that was not contemplated under the Habitual Felony Offender Act.
“So we had.this whole new layer of proof now that came in in this trial to a proven—proven beyond a reasonable doubt to a jury that Mr. Crews was under a sentence ending in 2029 and was on parole for that sentence and under supervision of that sentence for—as a result of—a twenty-five year sentence, I think, which, of course, obviously could only be a felony.
“There’s also in the record the worksheets which clearly indicate that there are prior felonies, you know, in the tally that you put in the worksheet. So we have plenty of proof that’s in the record in the file and in this case proven to a jury of a situation of a felony. And the worksheet, certainly there are multiple felonies indicated.
“The testimony was as to one. And in an overabundance of caution, that’s the only one I applied in the sentencing, because of the issue regarding Habitual Felony Offender Act and the requirements of proof. And so I only applied the one that was discussed as a result of the testimony given by the parole officer. And I think it was adequately proven, certainly as far as if records are required to be put in the file, certainly the worksheets, I think in, this instance, would have sufficed for the proof required under 13A-5-10.1 if I had chosen to apply several felonies. But I did only choose to apply one, because that was the one that was proven to the jury and discussed in the testimony of Officer Cardwell.”
(R. 562-65.)
Section 13A-5-10.1(a), Ala.Code 1975, states:
“Certified copies of case action summary sheets, docket sheets or other records of the court are admissible for the purpose of proving prior convictions of a crime, if the prior conviction is otherwise admissible under the laws of this state.”
Under the language of this statute, as well as Alabama caselaw interpreting this statute, see, e.g., Richardson v. State, 446 So.2d 662, 665 (Ala.Crim.App.1983); Kasha v. State, 677 So.2d 822 (AIa.Crim.App. *767 1996); Stout v. State, 547 So.2d 894, 900-01 (Ala.Crim.App.1988); and Johnson v. State, 541 So.2d 1112, 1115-16 (Ala.Crim. App.1989), prior convictions for the purpose of applying the Habitual Felony Offender Act, if not admitted to, must be proved by a certified record of the court, such as a docket sheet or case-action-summary sheet, because they are the best evidence of the validity of the prior felony convictions. See McDavid v. State, 439 So.2d 750, 752 (Ala.Crim.App.1983); Wright v. State, 709 So.2d 1318, 1320 (Ala. Crim.App.1997).
The State failed to present a certified copy, ease-action summary, or any other court record of Crews’s prior conviction that was relied on by the court in sentencing Crews as a habitual offender. Crews also did not admit to the prior conviction. Therefore, Crews was not sentenced in conformity with the plain language of § 13A-5-10.1(a). Although the State argues that the prior conviction was proved by the jury’s finding of the existence of the aggravating circumstance that “[t]he defendant was incarcerated, on pretrial release, on probation or parole, or serving a community corrections sentence at the time the crime was committed, or otherwise under sentence of law,” The Presumptive and Voluntary Sentencing Standards Manual, p. 26, that finding does not adequately prove a prior felony conviction.
Moreover, although this Court has previously held that the State’s failure to properly prove prior convictions for the purpose of sentencing a defendant as a habitual offender can be harmless, the circumstances of those cases are not present in this case. Here, Crews did not admit to prior felonies. Cf. Bethune v. State, 542 So.2d 332, 335 (Ala.Crim.App.1989)(al-though the State failed to produce properly certified copies of his prior convictions, Bethune’s sentence as a habitual offender was proper because “he admitted that he had prior convictions of ‘mostly four cases of possession, buying and receiving stolen property ... [and] one burglary.’ On cross-examination, he admitted it was ‘possible’ he had 9 prior felony convictions.”). Furthermore, by sentencing him pursuant to the Habitual Felony Offender Act, Crews was sentenced outside the permissible range of sentencing had the act not been applied. Crews was convicted of a Class B felony, but he was sentenced as a habitual offender with one prior felony conviction; thus, the range of sentencing was the range applicable for a Class A felony, 10 years’ imprisonment to 99 years’ imprisonment or life imprisonment. § 13A-5-9(a)(2). If he had been sentenced to a Class B felony without application of the Habitual Felony Offender Act, his sentencing range would have been not less than 2 years’ imprisonment or more than 20 years’ imprisonment. § 13A-5-6(a)(2). Crews was sentenced to 28 years’ imprisonment. Compare Wright v. State, 709 So.2d 1318, 1320 (Ala.Crim.App.1997)(trial court’s consideration of a prior conviction that was improperly proved was harmless error because the sentencing range was the same for three or four prior convictions and the other three convictions were proved by certified court documents). Because Crews Was sentenced outside the range of punishment for a Class B felony, the error was not harmless.
Crews’s contention, however, that the aggravating circumstance was improperly found by the jury because his prior conviction was not properly proved lacks merit. Section 13A-5-10.1(a) does not apply to a jury’s finding of the existence of the aggravating circumstance that “[t]he defendant was incarcerated, on pretrial release, on probation or parole, or *768 serving a community corrections sentence at the time the crime was committed, or otherwise • under sentence of law.” The Presumptive and Voluntary Sentencing Standards Manual, p. 26. Rather, an aggravating circumstance is to be proved beyond a reasonable doubt. The Presumptive and Voluntary Sentencing Standards Manual, p. 24. However, the method of proof is not specified. Here, the testimony of Cardwell, Crews’s parole officer, that Crews was serving a .25-year sentence and was to be supervised on parole until 2029 at the time of the offense was sufficient proof of the existence of the aggravating circumstance beyond a reasonable doubt.
Because the circuit court did not err in refusing to declare a mistrial, we affirm Crews's conviction. However, because the State did not properly prove Crews’s prior conviction for the purpose of the Habitual Felony Offender Act and because the error in sentencing Crews pursuant to that act was not harmless, we remand the case for resentencing. Due return should be filed in this Court within 35 days from the date of this opinion.
AFFIRMED AS TO CONVICTION AND REMANDED AS TO SENTENCING. *
WINDOM, P.J., and WELCH, J., concur.
KELLUM, J., concurs in the result.
JOINER, J., concurs in part and dissents in part, with opinion.

. Lipscomb testified that someone other than Crews actually owned the house.

. Lipscomb owed Crews $20 already and intended to buy $20 of drugs.

. Lumpkin acknowledged that Crews looked older at trial; Lumpkin noted that he had more gray hair. Lipscomb, who had known Crews approximately three years, also acknowledged that Crews looked older at trial.

. The pertinent aggravating factor is identified in The Presumptive and Voluntary Sentencing Standards Manual, p. 26; "The defendant was incarcerated, on pretrial release, on probation or parole, or serving a community corrections sentence at the time the crime was committed, or otherwise under sentence of law.”

.
" '" ‘The admission by a defendant of a prior conviction constitutes proper proof to enhance that defendant’s sentence under the Habitual Offender Act.’ ” Nix v. State, 747 So.2d 351, 357 (Ala.Crim.App. 1999) (quoting Daniel v. State, 623 So.2d 438, 441 (Ala.Cr.App.1993)). "When an accused admits prior felony convictions, they are deemed proven for purposes of § 13A-5-9, Code 1975.” Martin v. State, 687 So.2d 1253, 1256 (Ala.Crim.App. 1996) (citations omitted).’
‘‘Brown v. State, 784 So.2d 371, 372 (Ala. Crim.App.2000). See also Martin v. State, 687 So.2d 1253, 1256 (Ala.Crim.App.1996); Hayes v. State, 647 So.2d 11 (Ala.Crim.App. 1994); Connolly v. State, 602 So.2d 452 (Ala.1992); Tatum v. State, 607 So.2d 383 (Ala.Crim.App.1992); Loftin v. City of Montgomery, 480 So.2d 603 (Ala.Crim.App. 1985); Burrell v. State, 429 So.2d 636 (Ala. Crim.App. 1982).”
Allen v. State, 988 So.2d 615, 617-18 (Ala. Crim.App.2007).

 Note from the reporter of decisions: On March 11, 2016, on return to remand, the Court of Criminal Appeals affirmed, without opinion. On March 25, 2016, that court denied rehearing, without opinion.